NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0513n.06

No. 07-4175

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jul 27, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T  F O R  T H E |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| DAVID L. HARRIS, | ) | |
| | ) | O P I N I O N |
| Defendant-Appellee. | ) | |

BEFORE:    GIBBONS and McKEAGUE, Circuit Judges; and SHADUR, Senior District
Judge.[*]

**McKEAGUE, Circuit Judge**.  David Harris pleaded guilty to possession and distribution

of child pornography.  The district court calculated an advisory Guidelines range of 210-262 months

for Harris.  The district court sentenced Harris to 84 months in prison with three years of supervised

release and mandatory mental health treatment.  For the reasons given below, we vacate the sentence

and remand for resentencing.

## I.  BACKGROUND

David Harris lived with his family in Vienna, Ohio.  Agents from the Bureau of Immigration

and Customs Enforcement found that email addresses registered to Harris had been used to send

child pornography.  The agents executed a search warrant at Harris's home.  When the agents

---

[*] The Honorable Milton I. Shadur, United States District Judge for the Northern District of
Illinois, sitting by designation.

arrived, Harris admitted possessing child pornography and exchanging it with others electronically. He led the agents to his computer and indicated additional pornography could be found on CDs nearby.

The agents retrieved pornographic images from his computer and storage media. In total, the agents found 9500 images of child pornography and 269 films containing child pornography. These materials included images of sadism and bestiality, as well as images involving children less than five years old.

A grand jury indicted Harris on two counts of possessing visual depictions of minors engaging in sexually explicit conduct, one count of receiving and distributing child pornography, and one count of knowingly possessing a computer with child pornography on it. Harris pleaded guilty to all four counts.

The Presentence Report ("PSR") determined that Harris was in criminal history category I and that his offense level was thirty-seven, resulting in a Guidelines range of 210-262 months. The PSR noted that Harris is married and lives with his family and that Harris is a self-employed taxi-driver. Neither Harris nor the government objected to the PSR.[1] The court explained the sentencing process to Harris, noting that the Guidelines are advisory. Harris's sister and mother both spoke on his behalf. Harris also apologized for his actions. Harris's counsel requested a sentence near the mandatory minimum of 60 months. The district court then varied downward and sentenced Harris

---

[1]The government informed the court that the PSR referenced a plea agreement, but that there was no plea agreement in this case. This did not alter the Guidelines range for Harris.

to 84 months in prison, with three years of supervised release and mandatory mental health treatment.

The district court made clear that it must look at each sentencing factor. The district court stated that child pornography is a serious crime. The district court found Harris's crimes required a serious penalty–but that its "responsibility as a judge is to impose a sentence that is sufficient but not greater than necessary to comply with purposes [sic] of sentencing."

The district court found that Harris had led "a good and decent life and a responsible life." It noted his continuous employment history and his family life. It noted his lack of any criminal history other than a firearm offense to which he had pleaded no contest thirteen years earlier. The court found Harris's psychiatric evaluation was "not all together a positive report but it certainly is not as negative as one might get." The court found the report indicated treatment might be helpful in the short term and that the psychiatrist had not been able to diagnose any form of "paraphilia."[2] The district court considered both were positive factors for Harris.

The district court determined the sentence must be more than the mandatory minimum of 60 months given the seriousness of Harris's actions, but that his personal history and characteristics cut in favor of a reduced sentence. The court stated that a sentence of 84 months in prison with three years of supervised release–including provisions intended to limit Harris's access to computers and to minors–and mandatory mental health treatment would send Harris "a very strong message." The

---

[2]Paraphilia is a "sexual perversion or deviation." OXFORD ENGLISH DICTIONARY (3d ed. 2007).

court noted the sentence would not be sufficient in many cases, but that it would be sufficient for Harris.

The district court asked if either party had any objections or corrections. The government immediately objected. The government argued that the sentence was "ten and a half years below the bottom of the advisory guideline range" and "almost a full fifteen years below the top of the guideline range." The government also argued that a longer period of supervised release should have been imposed. Harris had no objections to the sentence.

The court noted the government's objections, but stated that it had made its decision in light of the maximum terms for each count, the Guidelines range, and "the context of the defendant himself and what he presented in this particular case." The government now appeals.

## II. ANALYSIS

### A. Standard of Review

Sentencing decisions are reviewed for procedural and substantive unreasonableness. *Gall v. United States*, 128 S. Ct. 586, 594, 597 (2007). We use an abuse of discretion standard to assess whether a sentence is unreasonable. *Id.* at 594. In applying the abuse of discretion standard, we must keep in mind that "the clear, overriding import of [*Rita*, *Kimbrough*, and *Gall*] is that appellate courts must respect the role of district courts and stop substituting their judgment for that of those courts on the front line." *United States v. Phinazee*, 515 F.3d 511, 521 (6th Cir. 2008).

If a party fails to object to the sentence below, we review for plain error. *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc). For plain error review to apply, a party

must have had an opportunity to raise the objection below. *Id.* Plain error review does not apply to challenges to the unreasonableness of the length of the sentence. *Id.* at 389.

**B. Procedural Unreasonableness**

Procedural unreasonableness involves "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range." *Gall*, 128 S. Ct. at 597. In particular, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2468 (2007).

The district court in this case properly calculated the Guidelines range, did not treat the Guidelines range as mandatory, and referred to each of the § 3553(a) factors. Further, it explained its variance in terms of those factors. The only aspect of the district court's sentence that may have been procedurally unreasonable was the adequacy of the explanation it offered. However, the government did not object to the adequacy of the explanation, though the district court provided the government an opportunity to object. Instead, the government objected only to the length of the sentence–not to the adequacy of the explanation for the sentence. Therefore, we review the government's challenge to the procedural reasonableness of the sentence for plain error. Under plain-error review, relief is granted only under "exceptional circumstances." *Vonner*, 516 F.3d at 386. The government must establish "(1) error (2) that was 'obvious or clear,' (3) that 'affected [the government's] substantial rights' and (4) that 'affected the fairness, integrity, or public reputation

of the judicial proceedings.'" *Id.* (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

The explanation offered in this case was far from ideal. As will be discussed below, the explanation overemphasized several elements of Harris's history and understated the severity of his crime. However, as the district court did calculate the Guidelines range and did offer an explanation for the variance framed in terms of the § 3553(a) factors, we find that any error in the adequacy of the explanation does not rise to the level of plain error. *Compare United States v. Blackie*, 548 F.3d 395, 402 (6th Cir. 2008) (finding failure to refer to Guidelines range and failure to provide any reasons for departure or variance constituted plain error), *with Vonner*, 516 F.3d at 386-88 (finding that plain error requires more than a less-than-ideal explanation; it requires a showing that the trial court plainly violated its duty to explain the sentence). Therefore, we turn from procedural unreasonableness to substantive unreasonableness.

**C. Substantive Unreasonableness**

Unlike a challenge to procedural unreasonableness, a party generally need not raise an objection to substantive unreasonableness below. *See United States v. Houston*, 529 F.3d 743, 755 (6th Cir. 2008). The government now challenges Harris's sentence as substantively unreasonable; therefore, we review for an abuse of discretion. *Id.*

A sentence is substantively unreasonable if "the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). While a sentence within the Guidelines range is presumed reasonable, a

sentence outside the Guidelines range is not presumed unreasonable. *Houston*, 529 F.3d at 755. In assessing substantive unreasonableness, we look to "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 128 S. Ct. at 597. In doing so, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*

The district court granted a 126-month downward variance from the low end of the Guidelines range. In addition to satisfying the requirements of procedural reasonableness, the district court must also sufficiently justify a variance of this size without placing an unreasonable amount of weight on any one factor. While we do not use any form of proportionality review, *United States v. Bolds*, 511 F.3d 568, 580-81 (6th Cir. 2007), it is "uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Gall*, 128 S. Ct. at 597; *United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008).

The district court granted leniency based primarily on the characteristics of the offender: Harris's lack of significant criminal history, Harris's employment history and family life, and Harris's psychological evaluation. It also considered the imposition of mandatory medical treatment and the conditions of release it would impose. In doing so, the district court relied on factors common to many defendants, *see United States v. Omole*, 523 F.3d 691, 698 (7th Cir. 2008) ("[W]e are wary of divergent sentences based on characteristics that are common to similarly situated offenders."), and it appeared to mischaracterize Harris's psychological assessment. The district court's emphasis on these factors is particularly troubling when paired with the lack of emphasis given to the seriousness of Harris's offense. *See United States v. Pugh*, 515 F.3d 1179, 1200 (11th

Cir. 2008). In light of these considerations, we hold that, taking into account the totality of the circumstances, the district court placed an unreasonable amount of weight on common features of Harris's character and Harris's sentence.

We begin with the district court's explanation of Harris's character. The district court noted that Harris had only one earlier conviction and that the earlier conviction was unrelated to child pornography. However, Harris was already in criminal history category I. Criminal history category I is the lowest category, and "the lower limit of the guideline range for Criminal History Category I is set for a first offender with the lowest risk of recidivism." U.S. SENTENCING GUIDELINES MANUAL § 4A1.3 cmt. n.3. While the district court may of course consider circumstances that call into question the appropriateness of the prescribed criminal history category, the district court did not explain why Harris's lowest possible criminal history category insufficiently captured the minimal nature of Harris's prior criminal conduct. *See United States v. Tomko*, 562 F.3d 558, 583 (3d Cir. 2009) ("Where a consideration speaks well of a defendant but in a manner typical of many similarly situated defendants, a district court's over-reliance on it, i.e., by varying significantly downward . . . signifies an abuse of discretion.")

The district court also noted Harris's family life and employment history. Although the Guidelines discourage consideration of these factors, U.S. SENTENCING GUIDELINES MANUAL §§ 5.H.5, 5H1.6, *Booker* renders the Guidelines advisory. Hence, a district court may consider such factors in deciding whether a variance is warranted and in determining the extent of any variance, but it should "address the 'discouraged' status of these factors." *United States v. Borho*, 485 F.3d 904, 913 (6th Cir. 2007). Here, the district court did not do so. Further, there is nothing in the

record to suggest that Harris's employment history or family history in any way differentiate Harris from other defendants sentenced under the Guidelines.[3] *See Tomko*, 562 F.3d at 583; *Omole*, 523 F.3d at 698.

The district court also based the variance on Harris's psychological evaluation. Yet the information available regarding that evaluation is in direct tension with the district court's reliance on it. The district court found that the PSR's description of the evaluation contains two positive pieces of information: short-term therapy may help Harris, and paraphilia could not be diagnosed. Both findings are undercut by the record. With regard to the effect of short-term therapy, the PSR makes clear that it would be effective only if Harris committed to it. It seems entirely unremarkable to note that therapy could help someone committed to therapy. It is remarkable, however, to treat this as a reason for variance, where there is no indication that Harris would commit to therapy. If anything, Harris's defensive responses suggest that he would not commit to therapy.[4]

Even more to the point, the psychologist's inability to diagnose paraphilia does not justify a variance. The PSR indicated that paraphilia could not be diagnosed because of insufficient information. It also noted that the psychiatrist had found any diagnosis difficult "because of [Harris's] significant defensive response set." The district court acknowledged Harris's defensive responses but nevertheless viewed the lack of a diagnosis as "a positive thing." We do not

---

[3]Harris lived with his wife and son, and he has a daughter from a previous relationship. Harris has been consistently employed since 1998, working at various times as a taxi driver, dispatcher, mechanic, and store manager.

[4] If the information regarding Harris's psychological evaluation were to change during the rehearing on remand, the district court may take it into consideration along with the other factors relevant in refashioning Harris's sentence.

understand how the difficulties Harris created for the diagnosing psychiatrist indicate anything positive about Harris's character.[5]

Similarly, the psychiatric care and terms of supervised release provided in the sentence may be considered as part of the 18 U.S.C. § 3553(a) analysis, but they do not appear in this case to justify a variance of the magnitude ordered by the district court. The psychiatric care provided in Harris's sentence is no different from that indicated by the Guidelines. *See* U.S. SENTENCING GUIDELINES MANUAL § 5D1.3(d)(7)(A) (recommending mandatory treatment for sex offenders). Meanwhile, while the conditions of release imposed by the district court are stringent,[6] they are only for three years where Harris was eligible for lifetime supervised release. *See* 18 U.S.C. § 3583(k). Further, Harris's counsel appeared to concede at oral argument that the terms of supervised release were not different from the terms of release imposed on other sex offenders.

These aspects of the sentence would be less troubling if they were not paired with the district court's vague description of the seriousness of Harris's offense. The district court noted that child pornography was "very serious." But it immediately qualified that statement by noting that it "was especially serious because often it can and does involve some real victims" and because "[s]ometimes there is more than even buying or receiving or viewing material." However, child pornography is, without qualification, a serious crime. And Harris's specific conduct in receiving

---

[5]Here, too, the district court may revisit the matter during resentencing if new information from the diagnosing psychiatrist becomes available.

[6]The district court limited Harris's access to minors and proximity to schools. These conditions exceed those provided in the Guidelines. In other respects, the terms of release were similar to those provided in the Guidelines. *Compare* U.S. SENTENCING GUIDELINES MANUAL § 5D1.3(a), § 5D1.3(c), § 5D1.3(d)(7)(B).

and distributing child pornography was unquestionably serious. Harris possessed 9,500 images and 269 movies, which included images of one-year-old children engaged in intercourse, children in bondage, and children involved in bestiality. Some of the images also included known victims. Further, Harris did not just receive images–he also traded images. The Guidelines range reflected all of these considerations by adding eighteen points to Harris's Guidelines score. The district court did not explain why those enhancements were out-of-place in this case or why Harris's character and history justified a major variance from the sentence recommended by the Guidelines. *See Pugh*, 515 F.3d at 1200.

The bottom line is that the factors the district court relied on, as articulated in the record, do not appear to justify a variance of this size. This is not to say that the variance itself is per se unreasonable–only that the district court must provide a sufficient justification for such a major variance. The district court in this case did not do so. Instead, the district court placed an unreasonable amount of weight on Harris's character. It did so despite Harris's lack of distinguishing characteristics and despite the seriousness of the offense. Accordingly, we find the variance here substantively unreasonable based on the current record.

### III. CONCLUSION

Though it is clear after *Gall*, *Rita*, and *Kimbrough* that we should not disturb a district court's discretion absent substantial justification, we remain responsible for ensuring the reasonableness of the sentences imposed by district courts. Accordingly, we **VACATE** and **REMAND** for resentencing consistent with this opinion.