NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0475n.06

No. 10-3020

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

*Jul 12, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff–Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| WILFREDO LOPEZ-GALVEZ, | ) | |
| | ) | |
| Defendant–Appellant. | ) | |
| | ) | |

Before: COLE, GIBBONS, Circuit Judges; and CLELAND, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant–appellant Wilfredo Lopez-Galvez

appeals the district court's imposition of an above-Guidelines sentence of 24 months' imprisonment,

the statutory maximum, for illegal reentry of a removed alien under 8 U.S.C. § 1326(a). For the

following reasons, we affirm the sentence as both procedurally and substantively reasonable.

I.

Wilfredo Lopez-Galvez was born in Chiapas, Mexico. He first came to the United States in

2000. Soon thereafter he was found in Kansas and ordered removed by an immigration judge in July

2000. Lopez-Galvez almost immediately returned to the United States but was deported through

---

[*]The Honorable Robert H. Cleland, United States District Court Judge for the Eastern
District of Michigan, sitting by designation.

-1-

New Mexico in August 2000. Lopez-Galvez subsequently returned to the United States and eventually made his way to Ohio. In October 2003, Lopez-Galvez was convicted of driving under the influence, driving with no operator's license, and resisting arrest. In November 2003, he was convicted of driving under the influence. In November 2004, Lopez-Galvez was convicted of driving with no operator's license, hit-and-run, and failure to maintain assured clear distance ahead. In November 2005, Lopez-Galvez was convicted of operating a motor vehicle while under the influence, driving with no operator's license, and not driving within the marked lane. While in Ohio, Lopez-Galvez married and had a son.

In February 2006, Lopez-Galvez was again removed from the United States. Approximately three years following this deportation, Lopez-Galvez returned to the United States. On September 8, 2009, Lopez-Galvez again encountered agents of the Bureau of Immigration and Customs Enforcement ("ICE") and officers with the St. Clairsville Police Department while he was in jail on multiple traffic charges. On October 15, 2009, a single count information was filed against Lopez-Galvez, charging him with unlawfully being in the United States after having been deported, in violation of 8 U.S.C. § 1326. On October 30, 2009, Lopez-Galvez pled guilty to this count pursuant to a plea agreement.

Because Lopez-Galvez pled under 8 U.S.C. § 1326, the presentence report ("PSR") prepared by a probation officer recommended using a base offense level of 8 pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2L1.2(a). Due to Lopez-Galvez's recognition and affirmative acceptance of responsibility, the PSR recommended a 2-level reduction pursuant to U.S.S.G. § 3E1.1(a). The PSR arrived at a base level of 6 and a criminal history category of III, resulting in a

Guidelines range of 2 to 8 months.[1]  The PSR also recognized that the maximum statutory term of imprisonment was 2 years.  Ultimately the PSR recommended a term of imprisonment of 8 months followed by a 1-year term of supervised release.  In sentencing memoranda, both Lopez-Galvez and the government agreed that a sentence of 8 months was appropriate.

During the sentencing hearing, the attorneys from both sides reiterated that they and the PSR all recommended a sentence of 8 months' imprisonment.  After explicitly considering the nature and circumstances of the offense, the history and characteristics of the defendant, and his criminal record, the district court varied upward from the Guidelines range and sentenced Lopez-Galvez to the statutory maximum, 24 months' imprisonment.  Regarding the nature and circumstances of the offense, the court noted that Lopez-Galvez had already been deported three times.  The district court stated that Lopez-Galvez's previous deportations were a reflection upon his personal history and characteristics because "[Lopez-Galvez], obviously, has demonstrated a lack of respect for the laws of the United States regarding immigration."  The district court asserted that this disrespect necessitated adequate deterrence.  Furthermore, the district court discussed Lopez-Galvez's criminal record, "which [gave] the court great concern," largely because Lopez-Galvez's convictions for driving under the influence demonstrate a problem with alcohol, "which he has minimized . . . [and] failed to acknowledge."  The district court observed that these violations indicate "that [Lopez-Galvez] represents a substantial risk to the safety of the citizens of Ohio."

---

[1]The criminal history category calculation included one illegal entry conviction and all of the above-mentioned convictions for driving offenses.

For those reasons, the district court "believe[d] that a sentence in this case should be sufficiently severe to deter him from the temptation of returning to the United States . . . [and] that a sentence more severe than the one suggested by the federal sentencing guidelines is necessary to accomplish that goal in this case." The final sentence was 24 months' imprisonment, followed by 1 year of supervised release in which Lopez-Galvez would surrender to immigration officials for deportation proceedings and participate in a program of testing and treatment for alcohol and controlled-substance abuse.

Lopez-Galvez now challenges this sentence, arguing that it is both procedurally and substantively unreasonable.

## II.

We review the district court's sentencing determination for reasonableness under a deferential abuse of discretion standard. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (citing *Gall v. United States*, 552 U.S. 38, 46 (2007)).[2] Our review has two components: procedural and substantive. *Id.* The district court's "task [was] to impose a sentence that is 'sufficient, but not

---

[2]Although Lopez-Galvez raised no procedural challenge during the sentencing proceedings, the district court failed to make the appropriate *Bostic* inquiry at the end of the sentencing proceedings, precluding plain error review. *See United States v. Cole*, 343 F. App'x 109, 111 (6th Cir. 2009) (deciding to review a procedural challenge to a sentence under an abuse of discretion standard because, although no objection was raised, the sentencing judge neglected to "'ask the parties whether they have any objections to the sentence . . . that have not previously been raised'" (quoting *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004))). In this case, the district court merely asked whether either party saw "any legal impediments to the sentence" or if there was "anything further on this case," to which both parties replied "no." Thus, we will not conduct plain error review.

greater than necessary, to comply with the purposes' of sentencing set forth in 18 U.S.C. § 3553(a)."

*Id.* We assess whether the district court's accomplishment of this task was reasonable.

## III.

Lopez-Galvez challenges his sentence as both procedurally and substantively unreasonable. He argues that his sentence is procedurally unreasonable because the district court did not consider and explain the rejection of his arguments in mitigation of his sentence. Lopez-Galvez argues that his sentence is substantively unreasonable because the 24-month sentence constitutes an unwarranted sentencing disparity; the district court ignored the full nature and circumstances of the offense; and the district court placed too much emphasis on Lopez-Galvez's prior criminal history.

## A.

In reviewing the procedural reasonableness of a sentence, we must "'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based clearly erroneous facts, or failing to adequately explain the chosen sentence.'" *United States v. Martinez*, 588 F.3d 301, 324 (6th Cir. 2009) (quoting *Gall*, 552 U.S. at 51). In *Bolds*, our court framed this as a three-step analysis: (1) whether the district court "correctly calculated the applicable Guidelines range"; (2) whether the district court "gave both parties the opportunity to argue for whatever sentence they deem appropriate" and then whether the district court "considered all of the § 3553(a) factors to determine whether they support the sentence requested by each party"; and (3) whether the "district court has adequately explained the chosen

sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."

511 F.3d at 579–80 (internal quotation marks and editorial marks omitted).

Lopez-Galvez makes no attempt to argue that the district court erred in its Guidelines calculation or interpretation, but rather he argues that the district court erred in failing to consider a few specific arguments intended to mitigate potentially harsh sentences. Lopez-Galvez states that his mitigating arguments were: (1) "because [he] remained in Mexico for 3 years after his last deportation, . . . this indicated a willingness and ability to stay outside the country"; and (2) "the only basis for reentering the country was not for an illegal purpose, but to visit his 5 year old son." These arguments appeared in his sentencing memorandum, and the first was presented by his attorney at the sentencing hearing. The sentencing memorandum stated, "After being deported in 2006, [Lopez-Galvez] stayed away for three years. He lived in Mexico and readjusted to that culture. Although he ultimately did return to the United States, he did so only to see his son[.]" During the sentencing hearing, Lopez-Galvez's attorney stated that he found it "significant that [Lopez-Galvez] did stay in Mexico for approximately three years following his deportation in 2006." Lopez-Galvez's attorney made no mention of returning for his son.

At the sentencing hearing, the district court recognized its receipt of the sentencing memoranda and "[gave] the attorneys the opportunity to make statements regarding the appropriate sentence." The district court also stated that it had considered the letter that indicated that Lopez-Galvez remained in Mexico for three years following his most recent deportation. Before pronouncing the sentence, the district court stated that "the Court is called upon to consider a number of factors in arriving at an appropriate sentence," and that it would "comment on the ones that [it

thought were] most significant in this case." The district court went on to discuss the reasons that supported a sentence of 24 months' imprisonment, based in the nature and circumstances of the offense, Lopez-Galvez's history and characteristics, and Lopez-Galvez's criminal record.

We have previously noted that "the district court is not required to give the reasons for rejecting any and all arguments made by the parties . . . [and] it is sufficient if the district judge sets forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *United States v. Petrus*, 588 F.3d 347, 355 (6th Cir. 2009) (quoting *United States v. Lapsins*, 570 F.3d 758, 773 (6th Cir. 2009)) (internal quotation marks and editorial marks omitted). Furthermore, in a case in which the district court sentenced the defendant to a within-Guidelines range, we did not require the district court to specifically respond to the appellant's "arguments about [] remorse, family support, substance abuse problems, and willingness to undergo counseling," because these matters are "encompassed within § 3553(a)(1), which requires a sentencing court to consider 'the history and characteristics of the defendant.'" *Lapsins*, 570 F.3d at 774. In *Lapsins*, the court found it sufficient for the district court to "account[] for the 'nature and circumstances of the offense and the history and the characteristics of [the defendant].'" *Id.*

Although the district court in *Lapsins* was "generous to Lapsins in several respects," *id.* at 771, and while the district court here did not evaluate Lopez-Galvez favorably, the analysis in *Lapsins* is persuasive. Lopez-Galvez argues that the district court should have specifically considered his mitigating arguments that he remained in Mexico for three years and only returned to visit his son. The district court was clear that it had considered the sentencing memorandum and

the letter that indicated that Lopez-Galvez had remained out of the country for that time; it was also careful to permit Lopez-Galvez and his counsel to present these arguments in court. The district court committed no procedural error by not specifically discussing the effect of two facts on the sentence imposed. Indeed, the district court adequately considered the § 3553(a) factors and discussed those it felt justified the statutory maximum, specifically the circumstances of the offense (his fourth deportation), Lopez-Galvez's history and characteristics (including a "lack of respect for the laws of the United States regarding immigration"), and his criminal record (including several convictions for driving while intoxicated). Based on its evaluation, the district court clearly considered Lopez-Galvez's time in and out of the United States but nonetheless felt other circumstances justified the high sentence. For these reasons, we conclude that Lopez-Galvez's sentence was procedurally reasonable.

B.

Within-Guidelines sentences are afforded a rebuttable presumption of reasonableness, but outside-Guidelines ranges may not be viewed as presumptively unreasonable. *Bolds*, 511 F.3d at 581. "In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may therefore take the degree of variance into account and consider the extent of a deviation from the Guidelines." *Gall*, 552 U.S. at 47. This does not mean that variance "requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." *Id.*

"The district court 'must consider all of the relevant § 3553(a) factors and impose a sentence that is sufficient but not greater than necessary to comply with the purposes of § 3553(a)(2).'" *United States v. Webb*, 616 F.3d 605, 610 (6th Cir. 2010) (quoting *United States v. Conatser*, 514

F.3d 508, 520 (6th Cir. 2008)). "'A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor.'" *Id.* (quoting *Conatser*, 514 F.3d at 520).

Lopez-Galvez argues that his sentence was substantively unreasonable in three ways: (1) the 24-month sentence constitutes an unwarranted sentencing disparity; (2) the district court ignored the nature and circumstances of the offense; and (3) the district court should not have increased Lopez-Galvez's sentence due to the "substantial risk" he represents because his criminal history calculation already accounted for this risk.

First, Lopez-Galvez argues that his sentence is substantively unreasonable because the 24-month sentence "creates a situation where he is not treated like other similarly situated defendants." In order for a sentence to be substantively reasonable, the district court must consider the relevant § 3553(a) factors, including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). We are "'concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct.'" *United States v. Benson*, 591 F.3d 491, 505 (6th Cir. 2010) (quoting *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007)).

In this case, Lopez-Galvez was sentenced to 24 months' imprisonment, the statutory maximum for the offense of illegal reentry under 8 U.S.C. § 1326. His Guidelines range was 2–8 months' imprisonment, calculated from a base level of 6 and a criminal history level of III. Lopez-Galvez has entered the United States illegally four times and, after serving his sentence, will be

deported for the fourth time. He has three convictions for driving/operating a motor vehicle while under the influence and three convictions for driving without a license. Despite this criminal history, Lopez-Galvez submits that his 24-month sentence creates an unwarranted sentencing disparity among similarly situated defendants. Lopez-Galvez relies almost exclusively on cases "in which this court upheld within-Guidelines sentences, which is not enlightening" because within-Guidelines sentences are afforded a presumption of reasonableness and "that the court upheld within-Guidelines sentences does not speak to the question of whether it would have reversed above-Guidelines sentences on the very same facts." *See United States v. Ruiz*, 403 F. App'x 48, 54 (6th Cir. 2010).

This circuit has upheld above-Guidelines sentences for similarly situated defendants to Lopez-Galvez. The court in *Ruiz* noted:

> In *United States v. Caserez*, where the defendant had been previously deported three times and the Guidelines did not reflect those illegal entries, this court upheld a sentence of 42 months, far above the Guidelines range of 15 to 21 months. 225 F.3d 660 (table), 2000 WL 1033024, at *1–2 (6th Cir. July 18, 2000). And in [*United States v.*] *Tristan-Madrigal* [601 F.3d 629 (6th Cir. 2010)], where the defendant had three prior illegal reentries, this court upheld a 36-month sentence, again much further above the Guidelines range of 15 to 21 months . . . .

*Ruiz*, 403 F. App'x at 54. In *Ruiz*, we affirmed an above-Guidelines sentence of 18 months for an 8 U.S.C. § 1326 violation where the alien had illegally entered the country seventeen times. In this case, Lopez-Galvez received a 24-month above-Guidelines sentence after four illegal reentries and several criminal convictions including driving under the influence.

Lopez-Galvez's sentence does not differ in any material way from other sentences affirmed by our court. And, in any event, Lopez-Galvez points to nothing from which we could conclude that

his sentence represents an unwarranted sentence disparity. We reject this argument that his sentence is substantively unreasonable.

Second, Lopez-Galvez argues that his sentence was substantively unreasonable because the district court "wholly ignored the nature and circumstances of the offense of conviction in imposing a sentence." Lopez-Galvez points to the same mitigating evidence discussed above—that he remained in Mexico for three years after his last deportation and that he only returned to see his son. But the district court did not fail to discuss the nature and circumstances of the offense. Indeed, it specifically mentioned the "nature and circumstances of the offense" when arriving at the sentence. The district court emphasized that the offense of "illegal reentry into the United States" was a serious offense "accentuated by the fact that [it was] the fourth illegal reentry." Given that the district court had no specific responsibility to consider these facts and that it explicitly discussed the nature and circumstances of the offense, we find that the district court adequately considered the nature and circumstances of the offense.

Third, Lopez-Galvez argues that his sentence was substantively unreasonable because the district court placed too much emphasis on its finding that Lopez-Galvez represented a "substantial risk to the citizens of Ohio," when this risk had already been accounted for in the calculation of his criminal history score. This argument is misplaced because Lopez-Galvez's criminal history score did not account for his entire criminal history, and, moreover, the district court is permitted to vary from the Guidelines range based on a defendant's criminal history. In assessing the sentence, the district court discussed Lopez-Galvez's criminal record. The court stated:

Mr. Lopez-Galvez has a record of drunk and driving offenses in the United States, which gives the court great concern. He comes here without a driver's license, without insurance, and he, obviously, has a problem with alcohol, which he has minimized, and really, failed to acknowledge that it is a problem. . . . [After reciting his offenses] I think . . . that he represents a substantial risk to the safety of the citizens of Ohio.

Although cited by neither party, this case is closely analogous to *United States v. Tristan-Madrigal*, 601 F.3d 629 (6th Cir. 2010). Tristan-Madrigal was removed three times prior to his arrest upon his fourth illegal reentry. *Id.* at 631. He had been convicted of drunk driving and drug use. *Id.* The PSR "assigned Tristan-Madrigal a total offense level of ten and a criminal-history category of IV, which resulted in a recommended range of 15 to 21 months' imprisonment." *Id.* "The criminal-history category reflected Tristan-Madrigal's convictions for drunk driving and drug use in 2001, his convictions for drunk driving in 2003, 2005, and 2008; and his unlawful reentry in 2008." *Id.* "[T]he district court analyzed the nature and circumstances of Tristan-Madrigal's offense, noting that he had committed the actions underlying the § 1326 violation numerous times and that his actions were 'quite problematic' given the potential danger to the public that drunk driving imposed." *Id.* at 631–32. Ultimately, "[t]he district court concluded that the 'two factors' of deterrence and public protection counseled toward an above-Guidelines sentence of [36] months' imprisonment." *Id.* at 632.

Two issues considered on appeal were whether the district court overemphasized Tristan-Madrigal's past criminal behavior and whether sufficient evidence supported the magnitude of the upward variance imposed. On the first issue, the court noted, "There is no dispute that the act of drunk-driving is . . . dangerous and that every time Tristan-Madrigal drove while under the influence

of alcohol he was putting himself and others at risk. The district court's consideration of Tristan-Madrigal's criminal history and the weight that the court afforded that history was reasonable." *Id.* at 634. Of Tristan-Madrigal's four illegal reentries, the court noted that only one had been charged and included in his criminal history calculation. Furthermore, the court found that "the district court viewed Tristan-Madrigal's repeated removal-and-reentry cycles as extremely relevant to determining what length of sentence was sufficient to prevent recidivism; to protect the public from the drunk-driving incidents, which he committed upon reentry; and to promote respect for the law." *Id.* at 634–35. The court held that, given Tristan-Madrigal's criminal record, an upward variance from the Guidelines range was substantively reasonable.

As in *Tristan-Madrigal*, the district court was concerned with Lopez-Galvez's prior convictions for driving under the influence and illegal reentry. And like Tristan-Madrigal, Lopez-Galvez's criminal history category included only one of his convictions for illegal reentry and all of his prior driving-offense convictions. The district court in both cases felt that the Guidelines range was insufficient to provide the amount of deterrence and protection needed, and varied upward—in *Tristan-Madrigal* from a 15- to 21-month range to a 36-month sentence, and in this case from a 2- to 8-month range to a 24-month sentence. The district court in the present case was careful to discuss what it found to be the relevant § 3553(a) factors and offered sufficient justification for our court to find that he did not "select[] a sentence arbitrarily, base[] the sentence on impermissible factors, fail[] to consider relevant sentencing factors, or give[] an unreasonable amount of weight to any pertinent factor." *See Conatser*, 514 F.3d at 520.

The district court offered sufficient justification for the imposition of Lopez-Galvez's above-Guidelines sentence. Indeed, we agree that Lopez-Galvez represents a "substantial risk" to the people of Ohio. Previous deportations and short prison sentences have failed to adequately deter him from returning to the United States and, additionally, have failed to deter him from driving while under the influence. Driving while intoxicated presents a fundamental threat, perhaps more dangerous than the threat presented by other crimes of violence. Every time Lopez-Galvez drove drunk, he no doubt risked his own life as well as countless others. The district court was not required to take such offenses lightly and give Lopez-Galvez a lesser sentence. For these reasons, we find that the district court adequately considered Lopez-Galvez's criminal history and came to a reasonable conclusion.

IV.

For the foregoing reasons, we affirm the 24-month sentence imposed by the district court as it is both procedurally and substantively reasonable.

**COLE, Circuit Judge, dissenting.** The majority claims that Lopez-Galvez's sentence is reasonable. I cannot agree. Because Lopez-Galvez's sentence was "greater than necessary" to satisfy the purposes of 18 U.S.C. § 3553(a), I would vacate his sentence and remand for resentencing.

Lopez-Galvez pled guilty to unlawful reentry to the United States after removal, in violation of 8 U.S.C. § 1326(a). His Guidelines range was two to eight months' imprisonment. He, the government, and the U.S. Probation and Pretrial Services Office (as indicated by the Presentence Investigation Report) all agreed that an eight-month sentence was proper. The district court sentenced Lopez-Galvez to twenty-four months' imprisonment, the statutory maximum for this offense given Lopez-Galvez's background and *triple* the sentence that all parties involved believed to be appropriate. That sentence was also *twelve times* greater than the bottom of Lopez-Galvez's Guidelines range. This immense variance was not warranted here.

We have reviewed the reasonableness of a sentence imposed under this statutory provision four times. In *United States v. Ruiz*, we affirmed a sentence of eighteen months under § 1326(a) for a defendant who had a Guidelines range of six to twelve months and "a minimum of 17 illegal entries." 403 F. App'x 48, 53 n.1 (6th Cir. 2010). In *United States v. Lopez*, we affirmed a sentence of twelve months and one day for a defendant who had "five prior deportations . . . in the eighteen months prior to the Indictment." 401 F. App'x 49, 52 (6th Cir. 2010). In *United States v. Gallagher*, we affirmed a defendant's mid-Guidelines sentence of eight months and eight days for a defendant who "re-entered the United States without permission within three weeks of his having been deported." 83 F. App'x 742, 743 (6th Cir. 2003). In *United States v. Johnson*, meanwhile, we

affirmed imposition of a statutory-maximum, twenty-four-month sentence. No. 99-3352, 2000 WL 799248 (6th Cir. June 16, 2000) (unpublished disposition). But that case involved a defendant whose Guidelines range was forty-six to fifty-seven months' imprisonment. *Id.*, at *1. And that defendant had prior convictions for "drug-related crimes, resisting arrest, and assaulting a police officer." *Id.*

These cases show the fundamental unreasonableness of Lopez-Galvez's sentence: Lopez-Galvez does not represent the most egregious offender capable of violating the statute, yet the district court chose to give him the highest possible sentence for a § 1326(a) violation. This was error. *Cf. United States v. Eve*, 984 F.2d 701, 704 (6th Cir. 1993) ("The extent of Eve's criminal history, unlike that of the defendant in *Belanger*, is not so egregious or severe that it warrants an upward departure [to the statutory maximum] from the guidelines by the district court."). Unlike the defendant in *Johnson*, Lopez-Galvez did not have a history of violent crime and his Guidelines range did not exceed the statutory maximum. Unlike the defendant in *Ruiz*, Lopez-Galvez has not amassed nearly a score of illegal reentries, he did not avoid responsibility, and his reason for coming to the United States was not to commit crimes or otherwise make trouble: it was to visit his U.S. citizen son. Lopez-Galvez's history and characteristics simply did not warrant the sentence he received, and the majority's conclusion to the contrary effectively renders reasonableness review an empty formality.

Moreover, all the cases to which the government directs our attention—and on which the majority relies—(besides *Ruiz*) are improper benchmarks for comparison, as they deal with individuals sentenced under what is now 8 U.S.C. § 1326(b). That provision criminalizes unlawful reentry after removal that is "subsequent to a conviction for commission of three or more

misdemeanors involving drugs, crimes against the person, or both, or a felony," *id.* § 1326(b)(1), or "subsequent to a conviction for commission of an aggravated felony," *id.* § 1326(b)(2). Those subsections, unlike § 1326(a), permit imprisonment for up to ten or twenty *years*, respectively. Comparison of sentences under § 1326(a) and § 1326(b) is thus inappropriate because the subsections do not involve "defendants with similar criminal backgrounds convicted of similar criminal conduct." *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007). Subsection 1326(b), unlike § 1326(a), is concerned with individuals who have the more severe criminal background it details, and who therefore face greater punishment. Lopez-Galvez does not qualify as such an individual.

Further, the proportional increases between the Guidelines range and the sentence received in the cases cited by the majority—*Ruiz*, *Tristan-Madrigal*, and *Caserez*—pale in comparison to that present here, notwithstanding the more egregious circumstances of those cases and the far greater possible punishment: Ruiz's sentence (eighteen months) was only 1.5 times greater than the top of his Guidelines range (twelve months); Tristan-Madrigal's sentence (thirty-six months) was 1.7 times greater (twenty-one months); and Caserez's sentence (forty-two months) was 2 times greater (twenty-one months). The majority's conclusion conveys to district judges the clear message that we will uphold as substantively reasonable any sentence that does not exceed the statutory maximum;[1] that

---

[1]Unless, of course, we consider the sentence substantively unreasonable because it is too low. *See, e.g.*, *United States v. Fink*, 502 F.3d 585 (6th Cir. 2007); *United States v. Borho*, 485 F.3d 904 (6th Cir. 2007); *United States v. Davis*, 458 F.3d 491 (6th Cir. 2006), *abrogated by Davis v. United States*, 552 U.S. 1088 (2008); *United States v. Harris*, 339 F. App'x 533 (6th Cir. 2009); *United States v. Camiscione*, 207 F. App'x 631 (6th Cir. 2006).

is, as long as district judges do not do what they cannot do (overstep the power bestowed on them by Congress), we will affirm. This approach abdicates our duty to ensure that a defendant's sentence is "reasonable." *Gall v. United States*, 552 U.S. 38, 46 (2007).

As both the government and U.S. Pretrial and Probation Services Office acknowledged, the circumstances of Lopez-Galvez's crime, as well as his background and characteristics, do not justify imposition of a statutory-maximum sentence. The district court erred in concluding otherwise, so I would find Lopez-Galvez's sentence substantively unreasonable. I respectfully dissent.