**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0078n.06

**No. 08-5020**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | **Feb 09, 2010** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| FORTINO BENITEZ-SALINAS, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  KENNEDY, MOORE and SUTTON, Circuit Judges.

SUTTON, Circuit Judge.  Fortino Benitez-Salinas pleaded guilty to violating the terms of his supervised release and appeals the resulting 24-month sentence.  We affirm.

I.

In November 2004, Benitez-Salinas pleaded guilty to being an illegal alien in possession of a firearm.  *See* 18 U.S.C. § 922(g)(5)(A).  The district court sentenced him to 21 months of imprisonment and to 3 years of supervised release.  In June 2006, the Government deported Benitez-Salinas to Mexico, and he began serving his supervised-release term subject to several conditions, including that he "not commit another federal, state, or local crime" and that he not "reenter the United States without the permission of the Attorney General."  R.23 at 3–4; *see* 18 U.S.C. § 3583(d).

Three weeks later, Benitez-Salinas illegally re-entered the United States. The Government arrested him in May 2007 when, as fortune would have it, several agents executed an unrelated drug-trafficking search warrant against his roommates. He pleaded guilty to illegally re-entering the country and received a 37-month sentence.

At the same time, Benitez-Salinas conceded that the illegal re-entry violated the terms of his supervised release. The sentencing guidelines recommended revoking his supervised release and imposing an 8-to-14-month sentence, consecutive to his illegal-reentry sentence. *See* U.S.S.G. §§ 7B1.1, 7B1.3, 7B1.4. The district court, however, chose not to follow the guidelines' recommendation, noting that Benitez-Salinas' nearly immediate re-entry into the United States and the details of his criminal history made an above-guidelines sentence appropriate. It imposed a 24-month consecutive sentence, the statutory maximum. 8 U.S.C. § 1326(b)(1); 18 U.S.C. §§ 3559(a)(3), 3583(e)(3).

II.

Benitez-Salinas challenges the reasonableness of this 24-month sentence—primarily the 10-month upward variance from the top of the guidelines. As a general matter, we review challenges to sentences imposed after the revocation of supervised release under the same standard that we apply to sentences after conviction. *See United States v. Kontrol*, 554 F.3d 1089, 1092 (6th Cir. 2009). We "ensure that the district court committed no significant procedural error" and "consider

the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*

*v. United States*, 552 U.S. 38, 51 (2007).

The district court imposed a procedurally reasonable sentence. It correctly calculated the

guidelines range, treated that range as advisory, considered the relevant § 3553(a) factors and

adequately explained its sentencing decision. *See id.*; *see also* 18 U.S.C. § 3583(e) (noting that

courts need not consider § 3553(a)(2)(A) or § 3553(a)(3) when revoking supervised release).

The district court also imposed a substantively reasonable sentence. In discussing why the

§ 3553(a) factors justified a 24-month sentence, the district court explained why a within-guidelines

sentence would not suffice and why it treated this case differently from a run-of-the-mill supervised-

release violation. It observed that Benitez-Salinas' immediate violation of his supervised-release

conditions and the details of his criminal history suggested he would offend again absent stiffer

punishment than the guidelines recommended. *See* 18 U.S.C. § 3553(a)(2)(B). When the district

court sentenced him in 2004 for the gun-possession conviction, Benitez-Salinas had been convicted

four times in the two preceding years—twice for drug-related charges, once for repeated instances

of domestic violence. When combined with Benitez-Salinas' decision to violate the rules of his

supervised release almost immediately, this criminal history suggested to the district court that

Benitez-Salinas presented a serious risk of recidivism and thus a serious risk of danger to the public.

*See* 18 U.S.C. § 3553(a)(2)(C).

The guidelines, the district court likewise explained, did not adequately account for Benitez-Salinas' "complete lack of respect for the law." R.30 at 3. Benitez-Salinas started committing crimes "almost immediately" after illegally entering the country the first time. Revocation Hr'g Tr. at 12. And in addition to illegally re-entering the country as soon as his most recent term of incarceration ended, he continued associating with drug dealers upon his return to Tennessee and, perhaps unsurprisingly, failed to report to his probation officer.

The district court did not abuse its considerable discretion in imposing this sentence. It gave ample reasons for the upward variance. *See United States v. Grossman*, 513 F.3d 592, 597 (6th Cir. 2008). And it did not commit a clear error of judgment by finding a "correlation between the size of the variance"—10 months—"and the reasons given for it." *Id.* at 596; *see also Gall*, 552 U.S. at 59.

Benitez-Salinas protests that this reasoning does not justify stacking a 24-month sentence on top of his 37-month sentence for illegal reentry—61 months in total. Instead, he says, the court should have added a top-of-the-guidelines sentence (14 months) to the 37-month sentence because he returned to the United States to work and to support his family. We do not doubt that a court could credit these reasons for entering the country and decide that Benitez-Salinas' recidivist proclivities justified only a top-of-the-guidelines sentence, not a 10-month upward variance. But these considerations by no means mandate that conclusion, and they by no means establish that the district court, who unlike us had a ring-side perspective on these issues, abused its discretion in seeing the matter differently.

III.

For these reasons, we affirm.