RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0164p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

     *Plaintiff-Appellee*,

  *v.*

EDUARDO PEREZ-RODRIGUEZ,

     *Defendant-Appellant*.

No. 18-4203

─────────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:18-cr-00396-1—John R. Adams, District Judge.

Argued: October 24, 2019

Decided and Filed: May 27, 2020

Before: CLAY, STRANCH, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Barry J. McWhirter, MCWHIRTER LAW FIRM, PLLC, Memphis, Tennessee, for Appellant. Danielle Angeli Asher, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Barry J. McWhirter, MCWHIRTER LAW FIRM, PLLC, Memphis, Tennessee, for Appellant. Danielle Angeli Asher, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

  STRANCH, J., delivered the opinion of the court in which CLAY, J., joined. MURPHY, J. (pp. 11–15), delivered a separate dissenting opinion.

_____

## OPINION

_____

JANE B. STRANCH, Circuit Judge.  Eduardo Perez-Rodriguez, a citizen of Mexico, was sentenced to 24 months in prison for one count of illegal reentry in violation of 8 U.S.C. § 1326. The district court applied an upward variance that more than doubles the middle of his 8- to 14-month Guidelines range.  Perez-Rodriguez challenges the substantive reasonableness of the upward variance and argues that the district court considered facts outside the record in selecting his sentence.   Because Perez-Rodriguez's sentence was substantively unreasonable, we **REVERSE** the district court's judgment and **REMAND** for resentencing.

## I.  BACKGROUND

Eduardo Perez-Rodriguez was ordered removed by an immigration judge in June 2016. He reentered the country 19 days later and was arrested and convicted of violating 18 U.S.C. § 1546 for reentry after deportation and false personation in immigration matters.  He was sentenced to time served of 140 days and removed for a second time in December 2016.

On June 22, 2018, Perez-Rodriguez was arrested in Ohio on a failure to appear warrant for child endangering, having returned to the country at some point prior to his arrest.  A grand jury indicted him on one count of illegal reentry, in violation of 8 U.S.C. § 1326, to which he subsequently pled guilty.  Perez-Rodriguez had one prior conviction in 2015 for operating a motor vehicle under the influence (DUI), for which he received probation.  His presentence report (PSR) noted that he attended a probation violation hearing, though no other information was provided to the sentencing court.  Based on this criminal history, his prior count of reentry after deportation, and his acceptance of responsibility, Pretrial Services and Probation recommended a Guidelines range of 8 to 14 months in prison.  At the sentencing hearing, the government sought a sentence within the high end of Perez-Rodriguez's Guidelines range.

The district court applied an upward variance and entered a sentence of 24 months—a 200% increase from the low end of the Guidelines range, a 71% increase from the high end, and a 118% increase from the middle of the range.  Noting Perez-Rodriguez's DUI conviction and

his probation sentence, the court mentioned that he "apparently violated his probation." It also discussed the need to deter individuals who demonstrate "a pattern of continuing to violate our laws, and come back to the country," citing Perez-Rodriguez's return to the country after two deportations and after serving 140 days for his prior reentry case. The court emphasized the statutory penalty for his conviction—zero to ten years—and concluded that even a high-end Guidelines sentence of 14 months would be too short in comparison to the maximum statutory penalty of ten years.

Perez-Rodriguez appeals his upward variance as substantively unreasonable. He also contends that the district court considered facts outside the record to justify the upward variance by assuming that he violated probation on his DUI charge.

## II.  ANALYSIS

### A.  Facts Outside the Record

We review the district court's consideration of the factual record under an abuse-of-discretion standard. "An abuse of discretion is established where the reviewing court is left with a definite and firm conviction that the district court committed a clear error of judgment." *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013).

In discussing the reasons for the upward variance, the district court stated that Perez-Rodriguez "apparently violated his probation" because the PSR noted that he had attended a probation violation hearing. Perez-Rodriguez is correct that there is no definitive evidence in the record before the sentencing court that he violated his probation. But the court made a reasonable inference based on the PSR and qualified its reliance on this information by using the word "apparently" to describe the alleged probation violation. The district court did not abuse its discretion by considering this as one of several factors.

### B.  Substantive Reasonableness

A substantive reasonableness challenge to a sentence is considered under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

The Supreme Court recently reiterated that the substantive reasonableness inquiry determines if the length of a sentence conforms with the sentencing goals set forth in 18 U.S.C. § 3553(a) and asks whether the district judge "'abused his discretion in determining that the § 3553(a) factors supported' the sentence imposed." *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020) (quoting *Gall*, 552 U.S. at 56); *see also United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010). In contrast, a sentence is procedurally reasonable where "the trial court follows proper procedures and gives adequate consideration to [the § 3553(a)] factors." *Holguin-Hernandez*, 140 S. Ct. at 766; *see also United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). The substantive reasonableness of a sentence is a separate inquiry: even if the district court followed proper procedures and adequately considered the appropriate factors, we ask whether the district court nevertheless imposed a sentence that is "greater than necessary." *Holguin-Hernandez*, 140 S. Ct. at 766–67. In short, procedural review of a sentence concerns the propriety of the factors that go into a sentence; substantive review assesses the reasonableness of the sentence that results.

One way to gauge the substantive reasonableness of a sentence is to ask whether "the court placed too much weight on some of the § 3553(a) factors and too little on others" in reaching its sentencing decision. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (quoting *Rayyan*, 885 F.3d at 442). If the court failed to give "reasonable weight to each relevant factor," the sentence that results is substantively unreasonable. *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019) (emphasis omitted).

Of course, we must respect the district court's reasoned discretion to weigh the factors "to fashion individualized, fact-driven sentences without interference from appellate courts." *Id.* at 708. But this discretion is not without limit. The starting point for substantive reasonableness review is the Guidelines range, because "in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)). Sentences within a defendant's Guidelines range are presumptively reasonable. *United States v. Christman*, 607 F.3d 1110, 1118 (6th Cir. 2010).

A sentence above or below the Guidelines range, however, requires the district court to "consider the extent of the deviation to ensure that the justification is sufficiently compelling to support the degree of variance." *Gall*, 552 U.S. at 50. The greater the variance, the more compelling the justification must be. *Id.*; *see also United States v. Poynter*, 495 F.3d 349, 352 (6th Cir. 2007). A district court may vary outside the Guidelines range if it explains how the present case is different from the typical or mine-run case that occupies the "'heartland' to which the Commission intends individual Guidelines to apply." *Kimbrough*, 552 U.S. at 109 (quoting *Rita*, 551 U.S. at 351). But to avoid unfair disparities with the typical case, we give closer review to a variance in a mine-run case. *Id.* In sum, "in those cases that fall outside the Guidelines' 'heartland,' the district court's decision to deviate from the advisory range is entitled to the 'greatest respect,' whereas a sentence that departs from the advisory range in a 'mine-run case' warrants 'closer review'" of the district court's justifications for variance. *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009) (quoting *Kimbrough*, 552 U.S. at 109).

We turn to whether Perez-Rodriguez's case is in the mine-run. A mine-run case is not a theoretical, minimally culpable offense; it is a normal case under the governing Guidelines range, which is calculated to incorporate the crime at issue, the offense level, and the criminal history category based on prior offenses. *See Rita*, 551 U.S. at 359. The Guidelines range here was based on illegal reentry in violation of 8 U.S.C. § 1326 (Perez-Rodriguez's crime) and provides for a base level of eight. Because Perez-Rodriguez had a prior felony conviction for an illegal reentry offense after his initial deportation in 2016, the Guidelines incorporated a four-level increase pursuant to USSG § 2L1.2(b)(1)(A). Acceptance of responsibility lowered his total offense level to ten. Perez-Rodriguez also has one previous DUI conviction. These two prior criminal convictions resulted in a total criminal history score of three and a criminal history category of II. Perez-Rodriguez's 8- to 14-month Guidelines range was calculated based on his prior deportation and illegal reentry, his DUI, and the instant illegal reentry offense.

The district court gave several reasons why a sentence within the Guidelines range would not be enough, primarily framed by Perez-Rodriguez's "pattern of continuing to violate our laws, and come back to the country for whatever reason." Perez-Rodriguez's only prior conviction for illegal reentry, however, was already reflected in the Guidelines range through the criminal

history score and as part of the § 2L1.2(b)(1)(A) enhancement.  The court also pointed to his count of false personation in immigration matters, which was part of the initial conviction for reentry after deportation, as an example of a "knowing effort to evade our laws."  But any illegal entry into this country is a knowing effort to evade U.S. laws.  And the specific act of appearing under an assumed or fictitious name is not unusual or abnormal for defendants charged with illegal reentry.  The district court also noted Perez-Rodriguez's 2015 DUI conviction to support the variance.  According to the United States Sentencing Commission, 92% of illegal reentry offenders have at least one prior conviction and the most common prior offense is driving under the influence or a related offense.[1]  Having a widely shared characteristic does not remove Perez-Rodriguez's case from the heartland.  His is a mine-run case of illegal reentry under the Guidelines.

Because the district court varied upward in a mine-run case, we give the sentence closer review.  *Kimbrough*, 552 U.S. at 109.  Whether a court varies up or down, we consider the "extent of the deviation" and make sure that "the justification is sufficiently compelling to support the degree of the variance."  *Gall*, 552 U.S. at 50; *see also Boucher*, 937 F.3d at 709 ("The question . . . is whether the district court gave a 'sufficiently compelling' reason for the dramatic downward variance in this case.").  As applicable to any substantive reasonableness review, justifications may include a policy-based disagreement with the Guideline, as the dissent notes. *See Kimbrough*, 552 U.S. at 109–11.  Whatever those justifications may be, we must still agree that they are "sufficiently compelling" on closer review of a mine-run case.  When our analysis includes comparing the "extent of the deviation" among our cases, we may consider the percentage of variance from the specified Guidelines range or the number of months of the sentence.  Our review evaluates whether the length of the sentence imposed on Perez-Rodriguez conforms with the sentencing goals of § 3553(a) and our caselaw.

We have affirmed upward variances in illegal reentry cases where the defendant not only demonstrated a pattern of returning to the country after deportation, but also committed crimes

---

[1]*See* U.S. Sentencing Comm'n, *Illegal Reentry Offenses* at 16-17 (Apr. 2015), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/immigration/2015_Illegal-Reentry-Report.pdf.

subsequent to removal and reentry that endanger the public.**2** The purpose of a variance in these situations is to protect the public by deterring the likelihood of more endangering illegal conduct in the future. For example, in *United States v. Lopez-Galvez*, we affirmed an upward variance of 16 months from the top of the Guidelines range based on the defendant's four illegal reentries and three DUIs. 429 F. App'x 567, 574 (6th Cir. 2011). The defendant in *United States v. Ibarra-Rodriguez* received a 14-month upward variance for 14 prior criminal convictions, 711 F. App'x 288, 289 (6th Cir. 2017), and the defendant in *United States v. Monje-Vasquez* received an 8-month upward variance for 15 prior criminal convictions, 763 F. App'x 449, 450 (6th Cir. 2019). In *Tristan-Madrigal*, a 15-month upward variance was found necessary to deter repeated removal and reentry cycles where the defendant was also involved in numerous drunk driving incidents that put the public at risk. 601 F.3d at 635. The actions of that defendant, we emphasized, presented an ongoing risk of harm that was distinguishable from "those cases where a sentencing court improperly speculates that an individual will cause some particular harm at a future point in time." *Id.* at 634.

Perez-Rodriguez's personal history is distinct from the histories of the defendants in those cases. They had multiple reentries and a substantial number of crimes upon return; Perez-Rodriguez had one DUI conviction *prior* to his first deportation, and he had not been convicted of anything that would endanger the public since that lone DUI conviction. Perez-Rodriguez does not exhibit the same extensive "pattern" of deportation and reentry nor do his past actions present that ongoing risk of harm to the public. While the district court believed that a within-Guidelines sentence is generally inadequate to deter repeat illegal reentry offenders, this disagreement with the Guidelines is not a sufficiently compelling justification for the variance based on the realities of Perez-Rodriguez's criminal history. The court below "placed too much weight" on the § 3553(a)(1) and (2) factors, particularly criminal history, deterrence, and protection of the public from further crimes of the defendant, in imposing the variance here. *Parrish*, 915 F.3d at 1047 (quoting *Rayyan*, 885 F.3d at 442).

---

**2**Sentencing Commission statistics suggest that 48% of all illegal reentry offenders were convicted of at least one post-reentry offense that is not another illegal reentry. U.S. Sentencing Comm'n, *supra* note 2, at 18.

The district court also failed to consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Rather than comparing the facts of this case to similar defendants, the court used the statutory penalties for the conviction—zero to ten years—as the reference point for the sentence it imposed on Perez-Rodriguez, comparing it specifically to the *maximum* statutory penalty of 120 months. But the maximum allowable sentence is not intended to be a barometer for the reasonableness of sentences imposed. "While the statutory maximum eliminates any risk of disparity caused by sentences above [the maximum term], that maximum does little to diminish disparities for individuals who receive (or should receive) sentences below [the maximum term]." *United States v. Poynter*, 495 F.3d 349, 355 (6th Cir. 2007). Unlike the Guidelines range, which is the proper starting point, the statutory maximum does not account for all the potential differences among defendants convicted of the same crime, and cannot be used to "fashion individualized, fact-driven sentences." *Boucher*, 937 F.3d at 708.

Though sentences must be fashioned on an individual basis, disparities in sentencing must be warranted. In *United States v. Warren*, we concluded that "reliance on [the defendant's] criminal history without fuller consideration of whether the selected sentence avoids unwarranted sentencing disparities was insufficient to justify such a stark departure from the guidelines." 771 F. App'x 637, 642 (6th Cir. 2019). Here the district court failed to address sentencing disparities.

We turn to review Perez-Rodriguez's 24-month sentence for unwarranted sentencing disparities. In *United States v. Stock*, we explained that sentencing data released by the Sentencing Commission should serve as "a starting point for district judges" to avoid unwarranted sentence disparities. 685 F.3d 621, 629 n.6 (6th Cir. 2012). Commission data indicate that Perez-Rodriguez's case is less serious than the average illegal reentry case in which the average offender has 3.2 prior deportations, and for those with prior convictions, an average of 4.4 convictions.[3]

---

[3]*See* U.S. Sentencing Comm'n, *supra* note 2, at 14, 16.

Our cases suggest that these Commission statistics generally fit the fact pattern of illegal reentry cases in which defendants are given sentences in the range of 24 months. In Lopez-Galvez's case, we affirmed a 24-month, above-Guidelines sentence after his four illegal reentries and several criminal convictions, including DUIs, subsequent to the illegal reentries. *Lopez-Galvez*, 429 F. App'x at 572. We affirmed Monje-Vasquez's 24-month, above-Guidelines sentence after three unlawful entries and 15 crimes. *Monje-Vasquez*, 763 F. App'x at 450. And in *United States v. Benitez-Salinas*, we affirmed the 24-month, above-Guidelines sentence upon the district court's finding that the variance was necessary for deterrence. 364 F. App'x 227, 228–29 (6th Cir. 2010). The district court there justified the sentence based not only on a number of drug-related and domestic violence convictions, but also because "Benitez-Salinas started committing crimes 'almost immediately' after illegally entering the country the first time. And in addition to illegally re-entering the country as soon as his most recent term of incarceration ended, he continued associating with drug dealers upon his return." *Id.* (citation omitted). Perez-Rodriguez does not fit the model of circumstances found in our cases that result in such a significant upward variance.

In *United States v. Ortega-Rogel*, on the other hand, we addressed many of the circumstances in Perez-Rodriguez's case and found substantively unreasonable a similar 118% upward variance from the middle of the Guidelines range for possession of false identification documents. 281 F. App'x 471, 474–75 (6th Cir. 2008). When considering the "nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), we found evidence of recent involvement with illegal documents, minimal criminal history, and a background of coming from poverty to be insufficient to support a sentence above the Guidelines range. *Ortega-Rogel*, 281 F. App'x at 474–75. The district court there also emphasized the seriousness of the offense and the need for deterrence and stated that the crime was "the most disrespectful thing a person can do for the laws of the United States, and in fact it undermines the integrity of our country." *Id.* at 474. But if Congress or the Sentencing Commission had that concern, we noted they "would presumably have prescribed harsher sanctions." *Id.* at 474–75. And regarding the need for deterrence and to "protect[] the public from future crimes, 18 U.S.C. § 3553(a)(2)(C), the fact that defendant will be deported does that to some extent." *Id.* at 475.

Perez-Rodriguez shares characteristics with Ortega-Rogel in his background, the nature and severity of his offense, and his impending deportation. As in *Ortega-Rogel*, the district court here applied the upward variance in part to "send a message" that the defendant "will come here in accordance with our laws." That rationale is inadequate to support the significant upward variance in this case.

Because Perez-Rodriguez's case falls within the mine-run of cases of illegal reentry under the Guidelines, it is subject to closer review to assure that the justification given "is sufficiently compelling to support the degree of variance." *Gall*, 552 U.S. at 50. Based on its upward variance, the district court entered a sentence of 24 months, a 118% increase from the middle of the Guidelines range. The court's justification for the upward variance is rooted in Perez-Rodriguez's "return to the United States after having been previously removed and after having been convicted of reentry after deportation." These facts, however, have been accounted for twice in the Guidelines range, both in the criminal history calculation and in the sentencing enhancement under § 2L1.2(b)(1)(A). Our review of the extent of the upward variance imposed in light of the sentencing goals of § 3553(a) and our caselaw indicates that the court placed too much weight on the § 3553(a) factors concerning criminal history, deterrence, and protection of the public from further crimes of the defendant, and that the court selected the sentence without properly considering sentencing disparities. Beginning with the correct standard—the Guidelines range, comparing the circumstances in this case to Commission data and our precedent, and applying the § 3553(a) factors show that Perez-Rodriguez's upward variance was improper and created unwarranted sentencing disparities. The upward variance imposed was substantively unreasonable.

## III. CONCLUSION

For the foregoing reasons, we find Perez-Rodriguez's sentence to be substantively unreasonable. We **REVERSE** the district court's judgment and **REMAND** for resentencing.

———————————

**DISSENT**

———————————

MURPHY, Circuit Judge, dissenting. If I were the sentencing judge in this case, I likely would not have chosen the 24-month sentence imposed on Eduardo Perez-Rodriguez. He pleaded guilty to illegally reentering this country in violation of 8 U.S.C. § 1326, and his guidelines range was only 8 to 14 months. My general weighing of the sentencing factors in 18 U.S.C. § 3553(a) would likely place great emphasis on uniformity concerns. *See* 18 U.S.C. § 3553(a)(6). Heavy reliance on the guidelines guards against a system in which each defendant's sentence turns "on the spin of the wheel that determined the judge to whom the case was assigned." *Pepper v. United States*, 562 U.S. 476, 517 (2011) (Alito, J., concurring in part, concurring in the judgment in part, and dissenting in part). Yet *United States v. Booker*, 543 U.S. 220 (2005), gave district judges substantial freedom to adopt competing sentencing views. It allows district courts to depart from a defendant's guidelines range based on other sentencing factors, including the defendant's specific circumstances, 18 U.S.C. § 3553(a)(1), or more general penological goals like the need for adequate deterrence, *id.* § 3553(a)(2)(B). And, as an appellate judge tasked with implementing *Booker*'s regime, I do not see a sufficient basis to overturn the district court's upward variance in this case. I thus respectfully disagree with my colleagues' considered contrary opinion.

Two factors drive my conclusion. *First*, criminal defendants "must surmount a high bar to succeed on a substantive-reasonableness challenge even to an upward variance." *United States v. Thomas*, 933 F.3d 605, 612–13 (6th Cir. 2019). The Supreme Court has instructed circuit courts that we must give "due deference" to a district court's decision to vary upward (or downward) when balancing the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 51 (2007). We "may not apply a presumption of unreasonableness" to that sentence and instead must review it only for an abuse of discretion. *Id.* This deference reaches its apex when a district court decides to vary on the ground that a defendant's unique circumstances make the defendant's case fall outside the mine-run case for which a guidelines range is most suited. *See United States v. Boucher*, 937 F.3d 702, 708–09 (6th Cir. 2019). But the Supreme Court has also allowed district

courts to depart from a guidelines range based on a general policy disagreement with a guideline "even in a mine-run case." *See Kimbrough v. United States*, 552 U.S. 85, 109–10 (2007); *see also United States v. Ford*, 724 F. App'x 428, 433–34 (6th Cir. 2018); *United States v. Herrera-Zuniga*, 571 F.3d 568, 584–86 (6th Cir. 2009).

*Second*, we have repeatedly affirmed upward variances similar to the variance in this case for other defendants who reentered the country in violation of § 1326. *See United States v. Monje-Vasquez*, 763 F. App'x 449, 451–52 (6th Cir. 2019) (24-month sentence when guidelines range was 10 to 16 months); *United States v. Ibarra-Rodriguez*, 711 F. App'x 288, 291–92 (6th Cir. 2017) (30-month sentence when guidelines range was 10 to 16 months); *United States v. Cano-Lopez*, 614 F. App'x 294, 295–96 (6th Cir. 2015) (per curiam) (12-month sentence when guidelines range was 2 to 8 months); *United States v. Rodriguez Renteria*, 605 F. App'x 538, 542–43 (6th Cir. 2015) (20-month sentence when guidelines range was 8 to 14 months); *United States v. Solano-Rosales*, 781 F.3d 345, 356–57 (6th Cir. 2015) (18-month sentence when guidelines range was 8 to 14 months); *United States v. Velazquez-Gonzalez*, 595 F. App'x 550, 551–52, 554 (6th Cir. 2014) (24-month sentence when guidelines range was 10 to 16 months); *United States v. Castro-Audelo*, 516 F. App'x 544, 544–45 (6th Cir. 2013) (per curiam) (108-month sentence when guidelines range was 33 to 41 months); *United States v. Hernandez-Sanchez*, 469 F. App'x 437, 438–39 (6th Cir. 2012) (per curiam) (18-month sentence when guidelines range was 2 to 8 months); *United States v. Martinez-Rendon*, 454 F. App'x 503, 507–08 (6th Cir. 2012) (48-month sentence when guidelines range was 10 to 16 months); *United States v. Vazquez-Gallardo*, 433 F. App'x 415, 416–18 (6th Cir. 2011) (12-month sentence when guidelines range was 0 to 6 months); *United States v. Lopez-Galvez*, 429 F. App'x 567, 571–73 (6th Cir. 2011) (24-month sentence when guidelines range was 2 to 8 months); *United States v. Luna Ruiz*, 403 F. App'x 48, 49, 53–55 (6th Cir. 2010) (18-month sentence when guidelines range was 6 to 12 months); *United States v. Tristan-Madrigal*, 601 F.3d 629, 632, 633–36 (6th Cir. 2010) (36-month sentence when guidelines range was 15 to 21 months); *Herrera-Zuniga*, 571 F.3d at 574, 577, 590–91 (48-month sentence when guidelines range was 24 to 30 months). Indeed, I have found no case in which we have previously overturned an upward variance for an illegal-reentry sentence.

Our deferential review standards and our § 1326 caselaw would lead me to uphold Perez-Rodriguez's sentence in this case.  The district court adequately discussed the § 3553(a) factors and explained its decision to vary upward, which rested primarily on the need for specific and general deterrence.  *See* 18 U.S.C. § 3553(a)(1), (2)(B).

As for specific deterrence, the court concluded that only a lengthier sentence would discourage Perez-Rodriguez from returning illegally again.  After his first removal in July 2016, Perez-Rodriguez "almost immediately, in less than three weeks, returned to [this] country illegally again."  And after his first illegal-reentry conviction in December 2016, Perez-Rodriguez was sentenced to "time served" (about 140 days in jail).  But that sentence "did not deter him from entering the United States again" after a relatively short time.  (He illegally reentered at an unknown time and was found in June 2018.)  It seems to me that the relative speed with which Perez-Rodriguez returned to this country is something that a guidelines range would not account for.  That factor could suffice for a judge rationally to conclude that the case fell outside the mine-run of cases.  *See Boucher*, 937 F.3d at 709.  And many of our cases upholding upward variances have relied on a pattern of illegal reentries.  *See, e.g.*, *Ibarra-Rodriguez*, 711 F. App'x at 291–92; *Cano-Lopez*, 614 F. App'x at 295–96; *Velazquez-Gonzalez*, 595 F. App'x at 554; *Hernandez-Sanchez*, 469 F. App'x at 438–39.

As for general deterrence, the district court contrasted first-time offenders "who may not fully understand the consequences of entering the country illegally" with repeat offenders who continue to reenter illegally.  The court indicated that repeat offenders "who have a pattern need to be deterred and need a lengthier term of sentence than I believe the guidelines provide for, in all candor."  And the court asserted that, "unless and until sentences of this nature are imposed, not the simple credit for time served or the simple guidelines sentences, are we going to send the appropriate message in my view that you follow the law and that you come to the country legally."  Our court has already indicated that this type of general policy disagreement with the specific guideline governing illegal reentry (U.S.S.G. § 2L1.2) "is an adequate and appropriate basis for refusing to follow the advisory Guidelines range."  *Herrera-Zuniga*, 571 F.3d at 586.

In response, my colleagues reasonably distinguish our prior illegal-reentry cases upholding upward variances.  Many of the defendants in these other cases had more (sometimes

significantly more) illegal reentries. *See, e.g.*, *Luna-Ruiz*, 403 F. App'x at 49. Perez-Rodriguez, by contrast, had only two. And many of the defendants in these other cases had more significant criminal histories. *See, e.g.*, *Rodriguez Renteria*, 605 F. App'x at 542–43; *Tristan–Madrigal*, 601 F.3d at 634–36. Apart from his prior illegal-reentry conviction, Perez-Rodriguez had only a prior conviction for driving while under the influence. In my view, however, these reasonable distinctions are not enough to declare Perez-Rodriguez's sentence substantively unreasonable. Instead, the question for us on appeal is whether the district court could reasonably conclude that the general principles from these cases extend to this case too. When applying the required "due deference to the district court's decision," *Gall*, 552 U.S. at 51, I believe the district court could have reached that conclusion. Even if Perez-Rodriguez's case fell closer to the mine-run case, we have still said that a reasonable judge could find that the normal guidelines range is "arbitrary and out of balance with Congress' determination of the seriousness of this type of offense." *Herrera-Zuniga*, 571 F.3d at 586. And while Perez-Rodriguez had only two illegal-reentry convictions, he did reenter this country relatively quickly.

My colleagues also cite an empirical study from the Sentencing Commission summarizing data on all illegal-reentry convictions in fiscal year 2013. This report suggested that the average defendant convicted of violating § 1326 had been previously "deported 3.2 times (with a median of two deportations)." U.S. Sentencing Comm'n, *Illegal Reentry Offenses*, at 14 (Apr. 2015). While the report might undermine the district court's conclusion that Perez-Rodriguez's pattern made his case unusual, I saw nothing in the report discussing the speed of reentries or how quickly an average defendant returned after a removal. Not only that, a reasonable judge could find that the report vindicates concerns with general deterrence. The high percentage of repeat offenders could lead that judge to conclude that the guidelines are generally not affording adequate deterrence for those types of offenders. *See Herrera-Zuniga*, 571 F.3d at 586.

One final point. It is worth recalling the reason why *Booker* made the guidelines advisory. The Sixth Amendment right to a jury trial bars a sentencing scheme under which a court may increase the punishment for a crime *only if* the court first finds facts that exacerbate the severity of that crime. *See Booker*, 543 U.S. at 232. Under the Sixth Amendment, an

"impartial jury"—not a judge—must find any fact necessary to expose the defendant to a steeper sentence. U.S. Const. amend. VI. The mandatory guidelines violated this command because they permitted a judge to vary upward from a baseline maximum sentence only after the judge found additional facts. *See Booker*, 543 U.S. at 233–34. By making the guidelines advisory, the Supreme Court fixed this constitutional problem because the Court has "never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." *Id.* Yet the more rigorously we review a district court's variance from a guidelines range to ensure that the court identified (*i.e.*, found) enough facts to take the case outside the mine-run of cases, the more we risk reinvigorating the constitutional problem that *Booker* sought to remedy. In that scenario, "the 'advisory' Guidelines would, over a large expanse of their application, *entitle* the defendant to a lesser sentence *but for* the presence of certain additional facts found by judge rather than jury." *Kimbrough*, 552 U.S. at 113–14 (Scalia, J., concurring). We should apply *Booker*'s reasonableness review in a way that implements the very reason for its existence.

For these reasons, I respectfully dissent.