NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0178n.06

No. 21-5292

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 20, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee | ) |
| | ) |
| v. | ) |
| | ) |
| JESSE ROBERT COOP, | ) |
| Defendant-Appellant. | ) |
| | ) |
| | ) |

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

OPINION

Before: GRIFFIN, WHITE, and NALBANDIAN, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** A jury convicted defendant Jesse Coop of one count of aiding and abetting Hobbs Act robbery (Count 1), one count of aiding and abetting the brandishing of a firearm during and in relation to a crime of violence (Count 2), and five counts of conspiracy to possess with intent to distribute controlled substances (Counts 3 through 7). We vacated Coop's firearm conviction and remanded to the district court for resentencing. *United States v. Coop*, 807 F. App'x 442, 450 (6th Cir. 2020). Coop appeals his new sentence, asserting procedural and substantive errors. We AFFIRM.

**I.**

We recounted the facts of this case in our decision addressing Coop's appeal of his conviction, *id.* at 444-46, and repeat only the facts essential for our present review. On April 27, 2018, Coop and Keith Harrington, his roommate, spent several hours before dawn "walking back and forth between their Memphis apartment and [Coop's truck], and making at least two trips away from the apartment before returning around 5:40 a.m." *Id.* at 444. Shortly thereafter, the men

drove away in the truck after laying a motorcycle flat in the truck's bed. *Id.* Soon after, they arrived aboard the motorcycle at a CVS, where they parked in the back before entering the store and walking around. *Id.* Coop soon returned to the motorcycle, while Harrington pulled a cap over his face and approached the store's pharmacist with a revolver and ordered him to get oxycodone, hydrocodone, and suboxone from the store's safe. *Id.* When Harrington left with the drugs, the pharmacist heard a motorcycle starting. *Id.* at 445. Police quickly found Coop and Harrington using a tracker in one of the pill bottles. *Id.* Security footage showed they returned to their apartment by truck, with the motorcycle in the back, and then hid the motorcycle and went inside. *Id.*

Coop and Harrington were indicted on eight counts. *Id.* Harrington pleaded guilty but Coop went to trial. *Id.* In his opening statement, Coop's attorney argued that Coop did not know Harrington had robbed the CVS until Harrington ran out with the pills and a gun, at which point Coop gave Harrington a ride for fear of being shot. *Id.* The jury convicted Coop of aiding and abetting Hobbs Act robbery, aiding and abetting the brandishing of a firearm in violation of 18 U.S.C. § 924(c), and conspiring to possess with intent to distribute controlled substances. *Id.* at 446. The district court sentenced him to concurrent terms of 78 months' imprisonment on Counts 1 and 3 through 7, and to a consecutive term of 84 months' imprisonment on Count 2, which was the statutory minimum, totaling 162 months in prison. *Id.*

Coop appealed the convictions, arguing that the evidence was insufficient; the district court erred in its jury instructions and in responding to a question from the jury; and that aiding and abetting Hobbs Act robbery is not a violent crime. *Id.* at 446-47. We found the evidence insufficient to support the firearm conviction, explaining that the government needed to prove that Coop "actively participated in the underlying drug trafficking or violent crime with advance

knowledge that a confederate would use or carry a gun during the crime's commission." *Rosemond v. United States*, 572 U.S. 65, 67 (2014). Although a jury can "infer from [a defendant's] failure to object or withdraw that he had such knowledge" where the "defendant continues to participate in a crime after a gun was displayed or used by a confederate," *id.* at 78 n.9, we reasoned that the government did not show enough to establish "beyond a reasonable doubt that Coop knew that the robbery he was planning would involve a firearm" because "the government presented no evidence that Coop knew that Harrington was armed." *Coop*, 807 F. App'x at 449. The government could only point to evidence that Coop and Harrington had planned the robbery extensively. *Id.* We vacated the firearm conviction and remanded for resentencing.

On remand, the government argued for the application of a five-level increase to Coop's base offense level under § 2B3.1(b)(2) of the Sentencing Guidelines, which applies "if a firearm was brandished or possessed" during the commission of a robbery. USSG § 2B3.1(b)(2). The five-level increase yielded a total offense level of 28, with a Guidelines range of 87 to 108 months imprisonment. The government asserted that the fact that a jury convicted Coop of aiding and abetting robbery was enough on its own to show that Coop had advance knowledge that Harrington would use a gun for the robbery. The government also provided statements from witnesses it had chosen not to call at trial. These statements, filed under seal, were provided to Coop. Notably, one statement said that Harrington "owned a .45 caliber gun," which he "kept in a closet in his room unloaded," and that both "[Harrington] and Mr. Coop handle[d] that firearm on an almost daily basis." Appellant's Br. 14. Coop challenged the application of the enhancement and argued for a total offense level of 27, with a Guidelines range of 78 to 97 months imprisonment.[1]

---

[1] Although Coop asserted that a five-level increase to the base offense level for his firearm conviction was inappropriate, his position resulted in a total offense level only one level lower

Acknowledging our holding in the prior appeal that there was no evidence at all in the record that Coop knew Harrington had a gun, the district court observed that the government has a lower burden of proof for establishing relevant conduct at sentencing than in proving an element of a crime at trial—a preponderance of the evidence versus beyond a reasonable doubt. Ultimately, three factors persuaded the district court to apply the five-level increase: the robbery conviction; the extensive planning by Coop and Harrington; and the additional witness statement that Coop knew Harrington owned a gun and handled it with him frequently. The court resentenced Coop to 97 months in prison, followed by three years of supervised release.

## II.

We review the reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). First, we consider whether the district court committed a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* Second, we "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard," accounting for "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* To find an abuse of discretion, we must be "left with a definite and firm conviction that the district court committed a clear error of judgment." *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) (quoting *Coach, Inc. v. Goodfellow*, 717 F.3d

---

than without the enhancement because he was also subject to the offense level for the group of drug convictions. Without the five-level increase, the firearm offense level would be 21, but the drug offense level would still be 26, and Coop would be subject to a one-level increase for the combined offense level, resulting in a total offense level of 27. *See* USSG § 3D1.4.

498, 505 (6th Cir. 2013)). We presume reasonableness if the sentence is within the Guidelines range. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

**III.**

Before proceeding to the merits, we acknowledge and reject Coop's request in his reply brief that we hold the case in abeyance pending a decision by the Supreme Court or action by Congress regarding the use of acquitted conduct at sentencing. The Supreme Court has denied certiorari in the case Coop raises, *see Osby v. United States*, 142 S. Ct. 97 (2021) (Mem), and we will not await hypothetical legislative action.

**IV.**

The five-level increase applies "if a firearm was brandished or possessed" during the commission of a robbery. USSG § 2B3.1(b)(2)(C). For "jointly undertaken criminal activity," relevant conduct for this increase includes "all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." *Id.* § 1B1.3(a)(1)(B). A sentencing court may "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." *Id.* § 6A1.3(a). Coop argues that the district court applied the wrong standard for relevant conduct and incorrectly found that the use of a firearm was within the scope of the robbery and reasonably foreseeable.

**A.**

Coop first contends, based on statements made by the government and the district court, that the district court used the wrong standard for attributing relevant conduct to a defendant engaged in joint criminal activity. He asserts that the government argued that "he was liable for

all acts that occurred during the robbery," and he points to statements by the district court that he contends show that the court accepted the government's broad view. Appellant's Br. 26. According to his paraphrasing, the court told him that "even though he was not the one who pointed the gun, and everyone agrees that he was not, he was still responsible for <u>everything</u> that happened during the robbery," and also "that while no one could know what was in his mind, everyone, including the jury, could see and evaluate what he did." Appellant's Br. 28.

This argument exaggerates the government's contention. The government did not argue that everything that happened could be attributed to Coop; it argued that a firearm could always be attributed in a robbery case. Although, as the district court noted, the government is wrong about this, Coop distorts the district court's statements, and the court plainly applied the correct standard. The statements Coop relies on came well after the district court's focused analysis of the firearm issue, during a broader discussion of the Guidelines. The court never used the word "everything" and certainly did not suggest that Coop being "responsible for what happened that day" was the root of its analysis; the court had already applied the correct standards in deciding to apply the five-level increase and was explaining that the law may hold people engaged in a joint criminal enterprise accountable for others' actions. R.136, PID 975-76. And the reference to the jury was relevant because the court was explaining that it, like the jury, must evaluate the evidence and draw reasonable inferences, and that it rejected Coop's narrative of the facts, just as the jury did for the robbery and drug convictions.

**B.**

Coop also argues that Harrington's use of a firearm was not within the scope of the jointly undertaken criminal activity. A court must make "particularized findings," *United States v. Campbell*, 279 F.3d 392, 400 (6th Cir. 2002), to "determine the scope of the criminal activity the

particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)," USSG § 1B1.3 cmt. n.3(B). "[T]he court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." *Id.* According to Coop, the district court made insufficient findings because its "entire analysis with regard to scope was that there was a robbery in which [he] participated, and there was a video showing hours of planning." Appellant's Br. 31. In his view, a district court must find more than "simply . . . that there was a robbery that was planned and executed." *Id.*

We first observe that Coop made no specific argument addressed to the scope factor at resentencing. His written objection was to the five-level enhancement as a whole and asserted that "there is no evidence that [he] possessed the firearm, saw the firearm, or even knew that Harrington was armed." At the resentencing hearing, although Coop's attorney repeatedly discussed whether the use of the firearm was reasonably foreseeable, he never specifically argued that the government had failed to show the use of the firearm was within the scope of the jointly undertaken criminal activity.[2]

The district court's findings were sufficient, particularly considering that Coop made no effort to undermine the government's showing on this front. We consider several favors to determine the scope of a defendant's jointly undertaken criminal activity: "(1) the existence of a single scheme; (2) similarities in modus operandi; (3) coordination of activities among schemers; (4) pooling of resources or profits; (5) knowledge of the scope of the scheme; and (6) length and degree of the defendant's participation in the scheme." *United States v. Donadeo*, 910 F.3d 886,

---

[2] The probation officer mentioned the scope of the jointly undertaken criminal activity, but Coop's lawyer pivoted back to whether the firearm would have been reasonably foreseeable.

895 (6th Cir. 2018) (citation omitted). These factors support that Harrington's use of the firearm was within the scope of the jointly undertaken criminal activity. This case involved a single robbery with two individuals, and the government produced footage of Coop and Harrington preparing together for hours at their apartment complex and "casing" the CVS together just before Harrington pulled the gun. *Coop*, 807 F. App'x at 444, 448. Coop's only argument is that the government has not proved that he agreed to the use of a firearm, but the Guidelines instruct that an agreement is not necessary. As explained in an application note for whether conduct was "reasonably foreseeable," if "two defendants agree to commit a robbery and, during the course of that robbery, the first defendant assaults and injures a victim," the second defendant is held "accountable for the assault and injury to the victim (even if the second defendant had not agreed to the assault and had cautioned the first defendant to be careful not to hurt anyone) because the assaultive conduct was within the scope of the jointly undertaken criminal activity (the robbery)." USSG § 1B1.3, cmt. n.3(D). Here, the single, confined undertaken Hobbs Act robbery inherently involved some "actual or threatened force, or violence, or fear of injury," *see* 18 U.S.C. § 1951(b)(1), and Harrington applied a threat of force using a firearm within the scope of the jointly undertaken Hobbs Act robbery. So Coop's argument on scope fails.

### C.

Coop next argues that the district court made insufficient findings regarding whether it was reasonably foreseeable that Harrington would possess or brandish a firearm in connection with the robbery. He asserts that "the district court's only finding was that . . . Coop knew that Harrington had a firearm in his apartment and so it was reasonably foreseeable that Harrington would use it

during the robbery." Appellant's Br. 32. He also notes that "Hobbs Act robbery does not require the use of a firearm, much less actual force." *See* 18 U.S.C. § 1951(b)(1).

The district court's findings were again sufficient. The court found the government met its burden based on three pieces of information: Coop's robbery conviction, evidence of Coop's extensive planning with Harrington, and the statement from the additional witness that Coop knew that Harrington had a gun in the apartment and the two frequently handled it together. We find no error. As the Guidelines explain, the government did not need to show that Coop and Harrington had the exact same plan in mind in order to conclude that Harrington's use of the gun was foreseeable. *See* USSG § 1B1.3, cmt. n.3(D). It was enough for the government to show that Coop knew Harrington owned a gun and had handled it frequently with him, combined with the robbery conviction and footage showing hours of planning.

Coop's counterarguments are unpersuasive. First, he notes that the additional witness reported seeing Harrington and Coop handle a .45-caliber firearm on a regular basis but the gun found on the day of the robbery was a .38-caliber handgun. However, as the district court noted, the fact that Coop knew Harrington owned a gun and had handled it with him often was enough—combined with the other facts—to suggest that Coop could foresee the use of a firearm, even if Harrington used a different firearm for the robbery. Second, Coop notes that, although the additional witness denied ever handling the .45-caliber firearm and said he did not play with guns, another witness told police there was a .38-caliber special Glock in the apartment and that he had seen Harrington and the additional witness in possession of this weapon. We agree with the district court that this discrepancy does not suggest the additional witness was being untruthful about Coop and Harrington handling the .45-caliber firearm together; rather, it suggests the witness sought to avoid implicating himself. Third, Coop notes that Harrington had a limited criminal history, falling

into criminal history category 1 under the Guidelines, and that the additional witness stated the .45-caliber firearm was kept unloaded in a closet, so Coop had little reason to expect a gun would be used even if he did know that Harrington owned one. Nevertheless, given evidence that Coop knew Harrington owned a gun and frequently handled it with him; their extensive planning together; and the robbery conviction, the court could still find that the possession and brandishing of a firearm in connection with the robbery was foreseeable.

As for the elements of Hobbs Act robbery, Coop misses the point. He again asserts that the district court reasoned that in every robbery an accomplice can foresee the use of a firearm. But the district court explicitly—and correctly—rejected that argument. Instead, as discussed, the court found based on the combination of the robbery conviction, the extensive planning, and the additional witness's statement about Coop's knowledge of Harrington's firearm ownership that it was more likely than not foreseeable that Harrington would possess and brandish a firearm in connection with the robbery.

## V.

Lastly, Coop argues the district court may have been influenced by the government's argument that he acted improperly at trial, rendering his sentence substantively unreasonable. On remand, the government presented new evidence that it claimed had not been presented at trial because the government believed Coop would testify and waited to present the evidence in rebuttal. The government expressed frustration with Coop's trial tactics, and Coop in turn expressed frustration with the government. The district court reminded Coop that the prosecutor was only doing his job and his feelings about the prosecutor were irrelevant to the proceedings. Coop asserts that these comments from the district court "chastis[ing]" him show it "may have been swayed by the prosecution's arguments" about Coop's conduct at trial. Appellant's Br. 39.

Because the district court imposed a sentence within the Guidelines range, we presume reasonableness, and Coop has given us no reason to vary from that presumption beyond vague speculation. *Vonner*, 516 F.3d at 389-90. Indeed, he concedes that the district court explicitly noted that his trial strategy was "not the issue . . . for resentencing" and that the court "asked the government to focus upon use or possession of a firearm." Appellant's Br. 36-37. Further, the record reflects careful deliberation by the district court with no hint of bias. The court explained that, before the hearing, it had considered a sentence at the upper end of the Guidelines but that it imposed a midrange sentence because Coop's attorney showed he had "progressed while . . . incarcerated." R.136, PID 983. Indeed, Coop's 97-month sentence is at the upper bound of the range that he argued should apply. We find no abuse of discretion.

## VI.

For the reasons stated, we AFFIRM.