NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0354n.06

No. 24-3816

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 22, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| JABRAELYN ANTONIO BUNN, | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

_____

Before: SUTTON, Chief Judge; STRANCH and RITZ, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Defendant Jabraelyn Antonio Bunn pled guilty to twelve drug-related crimes. He appeals his 121-month sentence as substantively unreasonable, arguing that the district court placed too much emphasis on the seriousness of his offense and not enough emphasis on mitigating factors. Because the district court did not abuse its discretion, we **AFFIRM** Bunn's sentence.

## I. BACKGROUND

In September and October 2023, a confidential source from the Mahoning Valley Violent Crimes Task Force conducted three controlled purchases of narcotics from Bunn at his home on East Warren Avenue in Youngstown, Ohio. On September 7, Bunn sold the source narcotics containing one gram of cocaine, tramadol, and fentanyl for $40. On September 20, Bunn sold the same source narcotics containing 1.87 grams of cocaine, methamphetamine, tramadol, and fentanyl for $110. On October 18, Bunn sold the source narcotics containing .95 grams of cocaine,

tramadol, and fentanyl for $40. Based on these controlled purchases, the FBI executed a search warrant at the East Warren Avenue house on October 25. Allen May, Bunn's half-brother, was present for the search. May occupied one bedroom in the two-bedroom house, and Bunn occupied the other. During the search, the FBI seized two rifles, two handguns, several ammunition magazines, two digital scales, and a "kilo press" from the common areas of the house; $1,759 in currency, several ammunition magazines, a money counter, and a rifle from May's bedroom; and $130 in currency, a digital scale, loose ammunition, 18 grams of methamphetamine, 20.73 grams of cocaine base, and 40.90 grams of a mixture containing tramadol, cocaine, para-fluorofentanyl, and fentanyl from Bunn's bedroom. In total, the FBI seized five firearms, three of which May stated belonged to him.

A few months after the search, on January 22, 2024, May was murdered. Bunn witnessed the murder and transported May to the hospital. On March 11, Bunn was arrested and charged with seven counts of distribution of controlled substances, four counts of possession with intent to distribute controlled substances under 21 U.S.C. §§ 841(a)(1) and b(1)(C), and one count of using and maintaining a drug premises under 21 U.S.C. § 856.

Bunn pled guilty to all twelve counts without entering a written plea agreement. In calculating Bunn's advisory guidelines range, the district court applied a two-level enhancement for possession of a dangerous firearm pursuant to USSG § 2D1.1(b)(1) and a two-level enhancement for maintaining a premise for purposes of distributing and storing controlled substances pursuant to § 2D1.1(b)(12). The district court applied a three-level reduction for Bunn's acceptance of responsibility pursuant to § 3E1.1(a)-(b). Bunn's resulting guidelines range was 97 to 121 months.

At his sentencing hearing, Bunn requested a sentence below the guidelines range, not to exceed 70 months. Bunn presented mitigation evidence, explaining that both of his parents engaged in criminal activity, and he witnessed his parents abuse and sell drugs, showcase firearms, and prepare to commit robbery. Bunn's parents served prison sentences when he was a child, causing him to be homeless for much of his life. He began abusing substances at a young age, but had recently participated in a substance abuse disorder intervention program. Further, May's recent death, which Bunn witnessed, caused him emotional trauma and nightmares.

Bunn also acknowledged that he had a criminal history category of II but argued that the category overstated his criminal history because his criminal history points accrued from a minor misdemeanor and a marijuana possession conviction. Bunn had three juvenile adjudications including aggravated robbery with use of a firearm at age 17. He had several prior disorderly conduct and assault convictions involving aggression with law enforcement, assault of his children's mother, and aggression with his children's maternal grandparents. While detained, Bunn had incurred a disciplinary infraction for touching a female correctional officer twice without her permission.

The district court found that a sentence on the high end of the guidelines range was warranted. The court first stated that 860.20 grams of converted drug weight could be attributed to Bunn's conduct. The court concluded that the quantity of drugs attributable to Bunn along with the recovered firearms, scale, and money counter, were indicative of Bunn's involvement in a large-scale drug selling operation. It noted that Bunn's criminal record began when he was 16 years old, and that Bunn had been convicted of aggravated robbery involving a firearm at 17 years old. The court emphasized Bunn's prior convictions for assault of his children's mother, his disorderly conduct including threats of violence against his children's maternal grandparents, and

his continuing concerning behavior including his inappropriate touching of a correctional officer while detained. The court also noted that Bunn was suspected to have participated in a gang. As for mitigation, the court considered Bunn's childhood circumstances and reasoned that Bunn "is a product of his environment, but he has had opportunities to break that cycle and he's chosen not to do so." R. 31, Sentencing Hearing Tr., PageID 188. Regarding May's death, the court stated: "the loss of life is deplorable, but unfortunately that is . . . the violence that surrounds drug sellers." *Id.* at PageID 185. For all of those reasons, the court imposed a sentence of 121 months.

## II. ANALYSIS

We review a district court's sentence for two types of reasonableness: procedural reasonableness and substantive reasonableness. *See United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). Procedurally, the district court must "properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). Substantively, the sentence must be sufficient but no more than necessary to achieve the sentencing goals set forth in § 3553(a). *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020).

Bunn raises only a substantive reasonableness challenge to his sentence, arguing that the district court placed too much emphasis on the seriousness of the offenses and not enough emphasis on mitigating factors. "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). Section 3553(a) provides

that a court should consider: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the "need for the sentence imposed" to reflect the seriousness of the offense, protect the public, deter others, and promote rehabilitation; (3) "the kinds of sentences available;" (4) "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant[;]" (5) "any pertinent policy statement[;]" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a). Sentences within a properly calculated guidelines range are afforded a rebuttable presumption of reasonableness, and we review the substantive reasonableness of a sentence under the abuse of discretion standard. *Conatser*, 514 F.3d at 520. "An abuse of discretion exists only if we are 'left with a definite and firm conviction that the district court committed a clear error of judgment.'" *United States v. Zabel*, 35 F.4th 493, 505 (6th Cir. 2022) (quoting *Perez-Rodriguez*, 960 F.3d at 753).

On appeal, Bunn first argues that the district court placed too much emphasis on the circumstances of his offense by overstating the presence of firearms at the East Warren Avenue house and understating the small quantity of substances sold during the controlled buys. Regarding the firearms, the district court reasoned that the number of firearms recovered could be "describe[d] . . . as an arsenal" and demonstrated that Bunn was involved in "a large scale drug selling operation." R. 31, PageID 181-82. Bunn argues that this reasoning was erroneous because May claimed possession of three out of five of the recovered firearms. But the district court considered this point, stating that, "[a]lthough . . . claimed by Mr. May, we will never know who owned the firearms" because "they were in the home accessible to both" May and Bunn. *Id.* at PageID 182. The court also explained that the currency and scales recovered further supported its

conclusion that Bunn was involved in more than a low-level drug selling scheme. Bunn argues that he was "truly a street-level dealer selling to low end users"—officers found only $130 in his bedroom, as opposed to $1,759 in May's bedroom. But the district court concluded Bunn was part of a "large scale drug selling operation" not only due to the cash recovered from his bedroom, but also due to the presence of the scale and narcotics in Bunn's bedroom. *Id.* at PageID 181. The district court did not abuse its discretion in finding that the circumstances of the offense supported a sentence at the high end of the guidelines range.

Bunn next argues that, in considering his history and characteristics, the district court placed undue emphasis on Bunn's prior misdemeanor convictions. According to Bunn, the court improperly considered him violent and dangerous based on misdemeanor disorderly conduct convictions that did not result in criminal history points. The district court, however, considered Bunn violent and dangerous based on the conduct underlying his convictions that included death threats to a police officer, assault of his child's mother, and kicking in the front door of his child's grandparents' home. The district court explained that his past behavior "indicate[s] a strong, underlying violent behavior and violent history." R. 31, PageID 184. The record supports the conclusion that the actions underlying Bunn's misdemeanor convictions indicate violent tendencies. The district court did not err in giving weight to the severity of this conduct.

Bunn's final argument is that the district court overlooked his traumatic childhood in considering his history and characteristics, ignoring that his parents, among other criminal activity, abused and distributed drugs. Despite Bunn's claims to the contrary, the district court did consider this mitigation evidence, and concluded, "[i]t's clear . . . that Mr. Bunn's parents failed him as a child." *Id.* at PageID 187. But the court determined that Bunn "is a product of his environment, but he has had opportunities to break that cycle and he's chosen not to do so." *Id.* at PageID 188.

The court then factored Bunn's mitigation evidence into its conclusion that a sentence on the high-end of the guidelines range was necessary to deter Bunn. "[E]ven if we would not have imposed the same sentence," the district court did not clearly err in weighing Bunn's mitigation evidence and concluding that a 121-month sentence was necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a). *Zabel*, 35 F.4th at 510.

On this record, the district court did not abuse its discretion when it imposed a sentence within the guidelines range. Accordingly, the sentence was not substantively unreasonable.

### III.    CONCLUSION

We **AFFIRM** Bunn's sentence.