NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0468n.06

No. 24-5733

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Oct 16, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| MALIK MOTLEY, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; CLAY and GIBBONS, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Malik Motley was sentenced to 303 months in prison and 5 years of supervised release after he pleaded guilty to one count of robbery affecting commerce and one count of use, carry, brandish, and discharge of a firearm during a violent crime, in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 924(c). On appeal, Defendant argues that his sentence is unreasonable. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.    BACKGROUND

### A. Factual Background

On October 3, 2021, Defendant Malik Motley entered a Dollar General store in Memphis, Tennessee. Two Dollar General employees were working behind the register when Defendant approached with a pack of cigars. One of the employees, A.M., requested identification from Defendant. Defendant acted as if he was checking his pockets for cash but instead pulled out a handgun wrapped in toilet paper. He then demanded money from the register while pointing the

- 1 -

handgun at A.M.'s face.  Defendant subsequently shot A.M. in the face, leaving her in a pool of blood on the floor while he fled on foot.  Defendant absconded with the cigars and some Halloween candy in a yellow Dollar General Plastic Bag.  Officers arrived at the Dollar General store several minutes later and found A.M. severely injured.  Emergency medical service personnel transported A.M. to a nearby hospital, where she remained in critical condition.

The shooting was captured by surveillance camera footage.  The officers reviewed the footage and identified Defendant as the suspected shooter from their prior interactions with him.  They went to his known residence and observed Defendant leaving his house.  Defendant noticed the officers and fled.  The officers gave chase but could not apprehend Defendant.  The officers obtained a search warrant for Defendant's house and discovered, among other things, a silver Smith & Wesson .357 revolver, a yellow Dollar General plastic bag, a bag of Halloween candy, and cigars.

Two days later, police officers responded to a prowler call wherein the caller reported that an individual had kicked in the door to a vacant residence in Memphis, Tennessee.  The officers arrived at the residence and announced their presence upon entering.  Defendant subsequently revealed himself and the officers recognized and detained him.

As a result of the shooting, A.M. sustained permanent, life-altering injuries that required extensive surgeries.  A.M. now breathes through a trache and an oxygen tank.  She must have reoccurring surgeries each year to address her injuries.  Because she has trouble breathing, A.M. had a pacemaker placed into her chest.  She also suffers from facial palsy, jaw joint disorders necessitating a splint in her mouth, right-sided hearing loss, vertigo, difficulty speaking, memory loss, and post-traumatic stress disorder.

**B. Procedural History**

On February 24, 2022, a federal grand jury returned an indictment against Defendant. The indictment charged Defendant with one count of robbery affecting commerce and one count of using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 924(c).

Defendant signed a plea agreement and pleaded guilty to both counts on October 24, 2023. As part of this plea agreement, the government agreed to recommend to the district court that Defendant receive full credit for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and that Defendant receive a high-end sentence of the Guidelines range.

The United States probation department then prepared a pre-sentence report ("PSR"). The PSR, however, did not reflect a downward adjustment for acceptance of responsibility. Instead, the PSR calculated Defendant's total offense level for Count I at 26: a base offense level of 20 with a 6 point upward adjustment because A.M.'s sustained permanent or life-threatening bodily injury, pursuant to U.S.S.G. § 2B3.1(b)(3)(C). Defendant's Count II charged carried a mandatory minimum sentence of 10 years and maximum term of life imprisonment, to run consecutively to Defendant's Count I sentence. With a criminal history category of I, Defendant's proposed Guidelines range was 63 to 78 months for Count I plus 10 years for Count II.

The district court held Defendant's sentencing hearing on April 16, 2024. The sentencing, however, was continued upon a motion by the government. Instead, the district court notified the parties that it was "going to consider an upward variance or an upward departure" on Count II and that it wanted to hear Defendant's testimony as to his acceptance of responsibility. Apr. 16 Hr'g Tr., R. 85, Page ID #208–09. Defendant explained that on the day of the shooting he had suicidal thoughts and spent one to two hours calling family for help. He was looking for "peace of mind"

and went to the Dollar General store to buy some candy. *Id.* at Page ID #214. At which point, he claimed he "black[ed] out" and did not remember shooting A.M or robbing the Dollar General store. *Id.* These "black outs" started approximately two months prior to the shooting because he started having seizures. Defendant then said that he "accept[ed] all responsibility" for the shooting and that he was "sorry for what [he] did." *Id.* at Page ID #215.

Following this hearing, the probation department prepared an addendum to the pre-sentence report. This addendum fully credited Defendant for his acceptance of responsibility, reducing his total offense level by 3 to 23. Consequently, with a criminal history category of I, Defendant's new proposed Guidelines range became 46 to 57 months for Count I plus the term for Count II. The addendum also noted Defendant's history of noncompliance while incarcerated and his initial diagnosis of depression in June 2019.

On July 30, 2024, the district court held a sentencing hearing for Defendant on Counts I and II. It initially calculated Defendant's Guidelines range in accordance with the addendum to the PSR. The government then objected to the downward adjustment for acceptance of responsibility, citing his previous statements on "blacking out," his admission to the crime, and his multiple offenses and violations while incarcerated as proof of his lack of acceptance of responsibility. July 30 Hr'g Tr., R. 84, Page ID #171–72. The district court noted how one point in the downward adjustment for acceptance of responsibility is contingent on the government's agreement, pursuant to U.S.S.G. § 3E1.1(b). Because the government did not agree to that point reduction, the district court recalculated Defendant's Count I offense level to be 24. With the same criminal history category of I, Defendant's new Guidelines range became 51 to 63 months for Count I in addition to the term for Count II.

The district court then considered the 18 U.S.C. § 3553(a) factors in sentencing Defendant. First, the district court reviewed the nature and circumstances of the offense. It viewed Defendant's case as "one of the most egregious cases" it had seen. *Id*. at Page ID #192. According to the district court, Defendant committed "[e]xtreme acts," evident from the nature of how Defendant shot A.M. in the face without reason, how A.M. was not "able to get away from him," and the serious injuries and pain inflicted onto A.M. *Id.* at Page ID #192–93.

Second, the district court considered Defendant's history and characteristics. Defendant had prior run-ins with law enforcement wherein he fought police officers. His mother and uncle primarily raised him, and he grew up in a turbulent neighborhood. Defendant dropped out of high school in his senior year and has not consistently held a job since 2020. He is a father to a child and is in a positive coparenting arrangement with the child's mother. Defendant suffers from scoliosis and has a history of seizures, which at times occurs daily. He also has a history of bipolar disorder and depression and has been inconsistent with his treatment for those conditions, though the district court noted evidence "indicat[ing] that the [D]efendant presented himself as more impaired than he really was." *Id.* at Page ID #195.

Third, the district court weighed the seriousness of the offense—specifically what the district court considered to be "one of the most serious cases that [it had] seen of someone who was violently attacked and survived." *Id.* at Page ID #196. A.M. suffered permanent and life-threatening injuries from being shot in the face by Defendant. She could only breath with a trache and the assistance of an oxygen tank and required multiple surgeries a year to deal with her injuries.

Fourth, the district court considered the need for the sentence imposed to promote respect for the law. It noted Defendant's lack of criminal history but inferred Defendant's lack of respect

for the law from his "disrespect" towards authorities, his "repeated instances of violence," and his ability to obtain shanks while he was in custody pending sentencing. *Id.* at Page ID #198.

Fifth, in spite of Defendant's mental health issues, the district court considered the need to protect the public from future crimes of Defendant. It recognized the need for Defendant to receive treatment for these issues but noted that these issues also made him violent.

Finally, the district court considered the need to impose a sentence to deter Defendant and others from similar criminal conduct. It determined that Defendant, and others, needed to be deterred from carrying out "senseless acts." *Id.* at Page ID #199.

After considering the § 3553(a) factors it deemed relevant, the district court sentenced Defendant to a high-end 63 month sentence on Count I and an above Guidelines 240 month consecutive sentence on Count II, for a total of 303 months. The district court justified its 120 month upward variance on Count II by noting that the manner by which Defendant used the firearm was "extremely egregious." *Id.* A.M. was helpless; the gun was "held in her face the entire time" and she had "to go through the emotions of having a large-caliber firearm in her face" before "[i]t was discharged at such a close range, causing such severe damage." *Id.* at Page ID #199–200. Thus, to the district court, the 120 month mandatory minimum was "insufficient to gauge the gravity of the offense involved." *Id.* at Page ID #199. Furthermore, the district court set supervised release on Count I for 3 years and on Count II for 5 years, to run concurrently for a total supervised release term of 5 years.

Following sentencing, the district court asked the parties if they had any objections to the sentence. Defendant objected to the 240 month sentence on Count II. In response, the district court clarified that the sentence was also based upon the Guidelines policies set forth under U.S.S.G §§ 5K2.2 and 5K2.6. Defendant then timely appealed.

## II.    DISCUSSION

### A.  Standard of Review

We generally review sentences imposed following conviction under the abuse of discretion standard.  *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007).  Under this deferential standard, "we may overturn a sentence only if it is procedurally or substantively unreasonable." *United States v. Kontrol*, 554 F.3d 1089, 1092 (6th Cir. 2009).

### B.  Analysis

#### 1.  The Sentence's Procedural Reasonableness

Defendant appears to argue that the district court's 303 month sentence was procedurally unreasonable.  A sentence is procedurally reasonable if a district court "explain[s] its reasoning to a sufficient degree to allow for meaningful appellate review." *United States v. Zobel*, 696 F.3d 558, 566 (6th Cir. 2012) (quoting *United States v. Brogdon*, 503 F.3d 555, 559 (6th Cir. 2007)) (citation modified).  "A district court commits reversible procedural error by 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" *Id.* (quoting *Gall*, 552 U.S. at 51).  Defendant concedes that "the [district] court addressed the factors it must consider under 18 U.S.C. § 3553." Defendant's Br., at 11.  His only argument regarding procedural reasonableness is that the district court "could have analyzed the mental illness and physical illness of [Defendant] to determine a lesser sentence." *Id.*

Defendant's argument does not suffice.  The district court did consider Defendant's mental and physical illness history at sentencing.  It noted Defendant's history of bipolar disorder and

seizures when weighing Defendant's history and characteristics. It also reviewed the PSR, which discusses Defendant's mental and physical illnesses, as well as a forensics evaluation, which notes Defendant's history of seizures and mental condition. Our discussion of this case's procedural history makes clear that the district court did not otherwise commit procedural error. Thus, we decline to find that the district court committed procedural error.

## 2. The Sentence's Substantive Reasonableness

Defendant then challenges the substantive reasonableness of his 303 month sentence. A sentence is substantively reasonable if it is "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (citation modified). "A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Mahbub*, 818 F.3d 213, 232 (6th Cir. 2016) (quoting *United States v. Camiscione*, 591 F.3d 823, 832 (6th Cir. 2010)).

"The starting point for substantive reasonableness review is the Guidelines range, because 'in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020) (quoting *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)). We may apply a presumption of reasonableness to a within Guidelines sentence but may not do so for an above Guidelines sentence. *Gall*, 552 U.S. at 51. We do not, however, conversely apply a presumption of unreasonableness to an above Guidelines sentence. *Id.*; *United States v. Thomas*, 933 F.3d 605, 613 (6th Cir. 2019).

As an initial matter, we note that the district court construed Defendant's above Guidelines sentence as both an upward variance and a departure. Ultimately, this matters little to our review. Sentencing departures and variances are distinct, but "we have not required that district courts carefully distinguish between whether the decision to deviate from the advisory Guidelines range is based on a departure or variance." *United States v. Herrera-Zuniga*, 571 F.3d 568, 586 (6th Cir. 2009); *see also United States v. Jordan*, 544 F.3d 656, 671 n.12 (6th Cir. 2008) ("A sentence outside the Guidelines based on Chapter 5 of the Guidelines is a 'departure' or 'Guideline departure,' whereas a sentence outside the Guidelines based on the § 3553(a) factors is a 'variance' or 'non-Guideline departure.'"). Our review is on the "reasonableness of the deviation," regardless of whether it was made through a departure or a variance. *Herrera-Zuniga*, 571 F.3d at 587. Because the district court's analysis appears to be entirely grounded in weighing the relevant § 3553(a) factors, despite its eventual invocation of U.S.S.G. §§ 5K2.2 and 5K2.6, we construe Defendant's 303 month sentence as a variance above the applicable Guidelines range. *See Jordan*, 544 F.3d at 671 n.12.

A district court may sentence a defendant above or below the Guidelines range so long as it "consider[s] the extent of the deviation to ensure that the justification is sufficiently compelling to support the degree of variance." *Perez-Rodriguez*, 960 F.3d at 754 (quoting *Gall*, 552 U.S. at 50). "The greater the variance, the more compelling the justification must be." *Id.* When varying, the district court must "explain[] how the present case is different from the typical or mine-run case that occupies the 'heartland to which the Commission intends individual Guidelines to apply.'" *Id.* (quoting *Kimbrough*, 552 U.S. at 109 (citation modified)). "[I]n those cases that fall outside the Guidelines' 'heartland,' the district court's decision to deviate from the advisory range is entitled to the 'greatest respect,' whereas a sentence that departs from the advisory range in a

'mine-run case' warrants 'closer review' of the district court's justification for variance." *Id.* (quoting *Herrera-Zuniga*, 571 F.3d at 582). A mine-run case "is a normal case under the governing Guidelines range, which is calculated to incorporate the crime at issue, the offense level, and the criminal history category based on prior offenses." *Id.*

The closeness of our review thus turns on whether Defendant's case is a mine-run case or a case that falls outside the Guidelines' "heartlands." *See Kimbrough*, 552 U.S. at 109; *Perez-Rodriguez*, 960 F.3d at 754. In varying upwards on the sentence for Count II, the district court cites to the "extremely egregious" nature of how Defendant used the firearm, "the emotions" A.M. experienced from "having a large-caliber firearm in her face," and the "severe, permanent, and lifetime injuries" to A.M. from Defendant's discharge of the firearm "just inches away from her face." July 30 Hr'g Tr., R. 84, Page ID #199–200. Though Defendant received a 6 point offense level upward adjustment for A.M.'s sustaining permanent or life-threatening bodily injury, pursuant to U.S.S.G. § 2B3.1(b)(3)(C), this adjustment does not completely capture A.M.'s permanent and life-threatening bodily injuries. As the district court correctly notes, A.M. sustained both permanent and life-threatening injuries: A.M. can only breathe with the assistance of an oxygen tank through a trache and the shooting initially left her in critical condition. Because Defendant's shooting inflicted both of § 2B3.1(b)(3)(C)'s sufficient conditions on A.M., his is not a mine-run case. Thus, we must afford the "greatest respect" to the district court's decision to vary upwards. *See Perez-Rodriguez*, 960 F.3d at 754.

Against this backdrop, the district court's total 303 month sentence, while severe, is substantively reasonable. As our discussion of this case's factual and procedural history makes clear, the district court sufficiently justified its upward variance. The relevant § 3553(a) factors—in this case the nature and circumstances of the offense, Defendant's history and

characteristics, the seriousness of the offense, the need to impose a sentence to promote respect for the law, the need to protect the public from further crimes of Defendant, and the need to impose a sentence to deter Defendant and others from similar conduct—all support the district court's conclusion that an upward variance was warranted in this case.

To the extent Defendant challenges the substantive reasonableness of his high end 63 month sentence for Count I, that endeavor fails. The district court sentenced Defendant within the Guidelines range for Count I, so we may apply a presumption of reasonableness to the sentence. *See Gall*, 552 U.S. at 51. Defendant has not overcome this presumption. Accordingly, we do not find Defendant's Count I sentence to be substantively unreasonable.

Defendant's remaining arguments to the contrary are unpersuasive. He first quibbles with the district court's exact weighing of his mental and physical illness history. We cannot reverse the district court's sentence simply because we "might reasonably have concluded that a different sentence was appropriate." *Gall*, 552 U.S. at 51. So long as "the district court considered and weighed all relevant § 3553(a) factors, . . . the defendant bears 'a much greater burden in arguing that the court has given an unreasonable amount of weight to any particular one.'" *United States v. Zabel*, 35 F.4th 493, 508 (6th Cir. 2022) (quoting *Zobel*, 696 F.3d at 571). That is the case here. The district court considered all relevant § 3553(a) factors, including Defendant's history of bipolar disorder, depression, seizures, and scoliosis as part of his history and characteristics. It was particularly influenced by the nature, circumstances, and seriousness of the offense—namely the circumstances leading to A.M. being shot in the face and the injuries which followed—in varying upwards by an additional 120 months. Therefore, we find that Defendant has not met his burden in arguing that the district court placed too little weight in his mental and physical illness characteristics.

Finally, Defendant appears to argue that his sentence resulted in a sentencing disparity. Title 18 U.S.C. § 3553(a)(6) requires a district court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." To be sure, the district court did not explicitly consider this factor when sentencing Defendant. We assume, however, that a district court "necessarily take[s] into account the need to avoid unwarranted sentence disparities, viewed nationally," when it correctly calculates a defendant's Guidelines range. *United States v. Houston*, 529 F.3d 743, 754 (6th Cir. 2008). The district court did just that and grounded its higher sentence in reasonable consideration of the nature, circumstance, and seriousness of the offense. The cases Defendant cites to in his briefing are inapposite since none of them involved the discharge of a firearm that struck and permanently injured a victim. Thus, we decline to find that the district court's upward variance is substantively unreasonable.

### III.   CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.